UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JACQUELINE MCAFERTY, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>ELON MUSK & AMERICA PAC,<br><br>Defendant. | Case No.: 1:24-cv-1346<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

Plaintiff Jacqueline McAferty ("Plaintiff"), by and through undersigned counsel, brings this Original Complaint—Class Action ("Complaint") and the following cause of action against Defendants Elon Musk and America PAC (collectively, "Defendants"), alleging as follows:

**JURISDICTION AND VENUE**

1.  Under 28 U.S.C. § 1332(d), the Class Action Fairness Act, this Court has jurisdiction over the claims alleged herein. As alleged below, this claim has all of the following: (1) minimal diversity; (2) 100 or more putative class members; and (3) more than $5 million dollars in controversy.

2.  The Court also has Diversity Jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because Plaintiff is domiciled in Arizona and Defendants are domiciled in Texas. Thus, complete diversity exists between Plaintiff and Defendants.

3.  Venue is proper under 28 U.S.C. § 1391(b) because Defendant Elon Musk resides in this District and Defendant America PAC is headquartered in this District.

1

**PARTIES**

4. Plaintiff is a citizen and resident of Maricopa County, Arizona.

5. Defendant Elon Musk ("Musk") is a citizen and resident of Travis County, Texas.

6. Defendant America PAC ("America PAC") is a political action committee founded by Musk to support "Secure Borders, Safe Cities, Free Speech, Sensible Spending, Fair Justice System and Self-Protection." *See* America PAC, https://theamericapac.org/ (last visited Nov. 4, 2024).

7. Musk founded and funded America PAC, is involved in its operations, made representations on behalf of America PAC, and benefits from increased traffic generated by America PAC on the social media platform X, of which Musk is the majority owner.

8. America PAC is headquartered in Austin, Travis County, Texas.

**FACTUAL ALLEGATIONS**

9. Plaintiff brings this case against Defendants for fraud, breach of contract, and for injunctive relief. Plaintiff seeks to certify a class of similarly situated persons under Federal Rule of Civil Procedure 23(b)(1), (b)(2), and (b)(3).

10. On or about October 7, America PAC launched a "Petition in Favor of Free Speech and the Right to Bear Arms," (hereinafter, "the petition" or "the America PAC petition") with an offer to pay individuals $47 for each registered voter referred who signed the petition. That petition stated it was "exclusively open to registered voters in Pennsylvania, Georgia, Nevada, Arizona, Michigan, Wisconsin and North Carolina" and "[e]xpires November 5" *See* https://petition.theamericapac.org/ (last visited Nov. 4, 2024).

11. At an October 19, 2024 rally, on Musk's X platform, and on America PAC's website, Defendants announced that if a registered voter turned over their personal identifying information (*i.e.,* address, cell phone number and e-mail address) and made a political pledge by signing a petition pledging support for "the Constitution, especially freedom of speech and the right to bear arms," they would be eligible to be selected "randomly" to win $1 million. *See* https://apnews.com/article/musk-1-million-giveaway-trump-voters-petition-b4e48acbfe04fde735e60b1911ad0197 (last visited Nov. 4, 2024).

12. Musk said, "we're gonna be awarding a million dollars, randomly, every day from now until the election," because "I figured, 'How do we get people to know about it?'" *See* America PAC (@America), "ELON MUSK: 'I have a surprise for you . . .'" X (emphasis added), https://x.com/america/status/1847851986495881434 (video embedded in URL).

13. Musk explained that this news would "really fly" and would help publicize America PAC's petition and, in turn, the PAC's efforts to elect Donald Trump. *Id.*

14. Musk then said that he would announce the first winner that evening, and called the name "John Dreher." *Id.*

15. Mr. Dreher was in the audience and mounted the stage in a red MAGA hat. "By the way," Musk said, "John had no idea." *Id.*

16. When Mr. Dreher came onto the stage to accept an oversized check, Musk asked that, in exchange for the money, "the only thing we ask" is for John to agree to be a spokesperson for America PAC. *Id.*

17. Shortly after Musk's live announcement of Mr. Dreher's as the first winner on October 19, America PAC posted on X: "Every day from now until Election Day, one registered swing state voter who signs the petition will be selected to earn $1 MILLION," and included a link

3

to the petition on America PAC's website. *See* America PAC (@America), "John received $1 MILLION . . . ." X (Oct 19, 2024, 11:58 P.M.), https://x.com/america/status/1847864967816511758.

18. Musk posted a similar message minutes before. *See* Elon Musk (@ElonMusk), "Every day, from now through Nov 5 . . . ." X (Oct 19, 2024, 11:25 P.M.), https://x.com/elonmusk/status/1847856712914555061.

19. Then, the next day on October 20, 2024, during another America PAC event, this time in McKees Rocks, Pennsylvania, Musk conducted a second "random" drawing, selecting Kristine Fiskell as the winner, who was also in the audience that day. *See* Adam Babetski, Musk gives away $1 million at McKees Rocks pro-Trump rally, raising legal questions, Pittsburgh Post-Gazette (Oct. 20, 2024, 6:36 P.M.), https://www.post-gazette.com/news/election-2024/2024/10/20/elon-musk-1-milliontrump-legal-questions-pittsburgh/stories/202410200166.

20. As consideration to enter the lottery and "sign" the petition, a participant must provide several data points of personal information: first and last name, email address, mailing address, and cell phone number. *See* https://petition.theamericapac.org/ (last visited Nov. 4, 2024).

21. A participant must then click a button that says "Sign Petition," with a space above asking for cell phone information that: "Will only be used to confirm you are the legitimate petition signer. No other purpose." *Id.*

22. The America PAC petition places no limitations on America PAC's use of or sale of the personal data it collects, nor does it provide any additional information about the planned use of data. *Id.*

4

23. Since launching on October 19, 2024, America PAC claims it awarded $1,000,000 checks to nine individuals through its random selections of winners. *Id.* It made those awards on October 19, 20, 21, 22, 24, 25, 26, and 27, 2024. No winner was announced on October 23.

24. Each winner is featured on America PAC's website and X handle, and has garnered significant public and press attention, driving significant traffic to Musk's X platform.

25. America PAC claims it has received over 1,000,000 petition signers to date.

26. In court on Monday, Nov. 4, 2024, Musk told a judge in Philadelphia that "so-called 'winners' of his $1 million-a-day voter sweepstakes in swing states are not chosen by chance but are instead chosen to be paid 'spokespeople' for the group." https://www.pbs.org/newshour/politics/musks-pac-claims-1-million-winners-not-chosen-by-chance (last visited Nov. 4, 2024).

27. Musk's lawyer further stated that "[t]he $1 million recipients are not chosen by chance. We know exactly who will be announced as the $1 million recipient today and tomorrow." *Id.*

28. Finally, Musk's lawyer stated that the recipients are chosen based on their personal stories and sign a contract with America PAC. *Id.*

29. Therefore, Defendants' statements indicating that individuals who signed the petition would be chosen at random to win $1,000,000 were false, and Defendants knew those statements were false at the time they were made.

30. Defendants made the false statements with the intention of inducing individuals to sign the America PAC petition.

31. Plaintiff signed the America PAC petition on October 20, 2024.

32.     Plaintiff submitted her personal, private information (first and last name, email address, mailing address, and cell phone number) (hereafter PII) as a condition of signing the petition, as described above.

33.     Plaintiff signed the petition in reliance on statements by Musk and America PAC that in doing so she had a chance of receiving $1,000,000.

34.     Defendants profited off of the valuable consideration provided by Plaintiff and the Class by driving traffic and attention to Musk's X Platform. In addition, Defendants can profit off the use/sale of Plaintiff's PII, which she was required to provide for participation in Defendants' lottery.

35.     Had Plaintiff been aware that she had no chance of receiving $1,000,000, she would not have signed or supported the America PAC petition and would not have provided her PII to Defendants. Her signature/support, as well as her PII were given as valuable consideration for a chance to receive the $1,000,00.

36.     Defendants defrauded Plaintiff and the Class Members by seeking their political support, as well as PII – both of which were valuable consideration provided by Plaintiff and the Class Members, in exchange for a chance to receive $1,000,000 which was never an actual chance. Plaintiff seeks to hold Defendants responsible to Plaintiff and those similarly situated Class Members whom had their valuable personal support and information taken by Defendants.

## CLASS ALLEGATIONS

37.     Plaintiff brings Count I of this action under Rule 23(b)(3) on behalf of a class tentatively defined as:

**All citizens of the United States who signed the America PAC Petition.**

38. Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing this case, and any judge assigned to hear this action.

39. Plaintiff reserves the right to modify this class definition as she obtains relevant information.

40. Each of the persons in the proposed Class has been harmed by the fraudulent acts of Defendants.

**The Action Meets the Requirements to be Certified as a Class**

41. Plaintiff is a member of the proposed Class.

42. The proposed Class can be identified through records of individuals who signed the petition.

43. <u>Numerosity.</u> The number of Class Members is believed to be over one million, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

44. <u>Commonality.</u> There are questions of law and fact common to Plaintiff and to the proposed class, including, but not limited to, the following:

   a. Were Defendants' statements false?

   b. Did Defendants know their statements were false at the time they were made?

   c. Did the individuals who signed the Petition convey to Defendants their personal information, such as cell phone numbers, addresses, and email addresses?

   d. What are the extent of the damages suffered by the proposed class?

45. <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

46. <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the proposed Class because her interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the proposed Class.

47. <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the proposed Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on proposed Class members.

48. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Members of the proposed Class to individually redress effectively the wrongs done to them, as the fraud claim has no fee-shifting provision. Even if the Members of the proposed Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial

benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

49. Class certification is appropriate because Defendants have acted on grounds generally applicable to the proposed Class, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Classes' Members. Fed. R. Civ. P. 23(b)(2).

## CAUSE OF ACTION

50. Plaintiff incorporates the foregoing paragraphs of this Complaint.

51. The right to a remedy for an injury is a constitutionally protected right. Tex. Const. art. 1, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law").

**COUNT I: FRAUD BY ALL DEFENDANTS**

52. Plaintiff incorporates paragraphs 1-46 of this Complaint.

53. There are six elements required to prove a fraud claim: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered damages. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011).

54. Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

55. Defendants' representations were false because they have since admitted that the winners were pre-determined.

56. Defendants knew their representations were false at the time they were made; Defendants have continued to promote the petition as a chance to win $1,000,000 "randomly" while simultaneously choosing winners based on selective, pre-determined criteria.

57. Defendants intended that their representations be acted upon by Plaintiff and members of the proposed Class. Defendants continually promoted the petition and encouraged individuals to sign it.

58. Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

59. Individual proof of reliance is not necessary here because any participant provided her personal identifying information with the understanding the lottery was legitimate.

60. Plaintiff and other members of the proposed Class suffered damages by giving their personal information to Defendants.

**COUNT II: BREACH OF CONTRACT BY ALL DEFENDANTS**

61. Plaintiff incorporates the foregoing paragraphs of this Complaint.

62. There are five elements required to prove a breach of contract claim: (1) there is a valid and enforceable contract; (2) the plaintiff is the party bringing suit; (3) the plaintiff performed her contractual obligations; (4) the defendant breached the contract; and (5) the party suffered damages.

63. Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

64. Defendants' representations were false because they have since admitted that the winners were pre-determined.

65. Defendant provided her personal identifying information as consideration for being eligible to win $1,000,000.

66. Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

67. Defendant breached the contract by pre-determining the winners of the purported lottery and not drawing randomly as Defendant had agreed to do.

68. Plaintiff and other members of the proposed Class suffered damages by giving their personal information to Defendants.

**COUNT III: VIOLATIONS OF THE UNCONSCIONABILITY ARM OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

69. Plaintiff incorporates the foregoing paragraphs of this Complaint.

70. There are four elements required to prove a claim under the unconscionability arm of Tex. Bus. & Com. Code §17.44(a), the Texas Deceptive Trade Practices Act: (1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant engaged in an unconscionable action; (4) the defendant breached the contract; and (5) the defendant's action was the producing cause of the plaintiff's damages.

71. Plaintiff is a consumer who purchased the right to be in Defendants' lottery by providing her personal identifying information.

72. Plaintiff's personal identifying information is a thing of value Defendant required before Defendant would allow Plaintiff or any other class member to participate in the lottery.

73. Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

74. Defendants' representations were false because they have since admitted that the winners were pre-determined.

75. Because Defendants knew all along the winners were pre-determined, and had no intention of operating a genuine lottery as Defendant represented it would, Defendant engaged in an unconscionable course of conduct giving rise to a DTPA claim.

76. Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

77. Plaintiff and other members of the proposed Class suffered damages by giving their personal information to Defendants.

**COUNT IV: INJUNCTIVE RELIEF UNDER FED. R. CIV. P 23(b)(2)**

78. Plaintiff incorporates the foregoing paragraphs of this Complaint.

79. Plaintiff and the proposed class members provided their personal identifying information to Defendants as a condition and requirement by Defendants before Plaintiff and the proposed class members were permitted to participate in the purported lottery.

80. Plaintiff and the class members would not have provided their personal identifying information if Defendants did not require it as a condition of participation.

81. Defendant did not specify how Plaintiff or the proposed class members' data would be used or stored after Plaintiffs provided it to Defendants.

82. Plaintiff and the proposed class member having now discovered no legitimate lottery existed, and that they provided their personal identifying information to Defendants for nothing in exchange, now demand Defendant be enjoined from using the data or otherwise providing it to third parties.

83. Plaintiff demands the Court enjoin Defendant by requiring Defendant to destroy all personal identifying information Plaintiff and the proposed class members provided to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as a representative of all other persons similarly situated, prays for judgment against Defendants, awarding relief as follows:

   a. Certifying the proposed Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the Class;

   b. Damages suffered by Plaintiff and each member of the Class;

   c. Pre-judgment interest from the date of filing this suit;

   d. Injunctive Relief under Fed. R. Civ. P. 23(b)(2);

   e. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

   f. All costs of this proceeding; and

   g. All general, special, and equitable relief to which Plaintiff and the respective Members of the Class are entitled to by law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial by the maximum number of persons permitted by law on all issues herein triable to a jury.

Date:  November 5, 2024,

                Respectfully submitted,

                */s/ Josh Sanford*
                Josh Sanford
                Texas Bar No. 24077588
                josh@sanfordlawfirm.com
                **SANFORD LAW FIRM PLLC**
                10800 Financial Centre Pkwy, Ste 510
                Little Rock, Arkansas 72211
                Telephone: (501) 221-0088
                Facsimile: (888) 787-2040

                Jarrett L. Ellzey
                Texas Bar No. 24040864
                jellzey@eksm.com
                Leigh S. Montgomery
                Texas Bar No. 24052214
                lmontgomery@eksm.com
                Alexander G. Kykta
                Texas Bar No. 24107841
                akykta@eksm.com
                **EKSM, LLP**
                1105 Milford Street
                Houston, Texas 77006
                Phone: (888) 350-3931
                Fax: (888) 276-3455

                **ATTORNEYS FOR PLAINTIFF**