IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JACQUELINE MCAFERTY, individually and on behalf of all others similarly situated, *Plaintiff,* | §<br>§<br>§<br>§ | |
| vs. | §<br>§ | No. 1:24-cv-1346 |
| ELON REEVE MUSK & AMERICA PAC, *Defendants*. | §<br>§<br>§ | |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants respectfully submit this reply in support of their Motion to Dismiss (ECF No. 5, "Mot.") Plaintiff's Original Class Action Complaint (ECF No. 1, "Compl.").

I.    **The Response does not cure Plaintiff's failure to plead facts establishing standing.**

a.    **Plaintiff does not cure her failure to plead eligibility for the citizen petition program (the "Program").**

Plaintiff did not plead that she was a registered voter, which was a prerequisite to even being eligible to be selected for the opportunity to earn $1,000,000 as an America PAC spokesperson. Mot. at 7. Plaintiff does not dispute this but claims that her signing of the petition and her purported belief that she might receive $1,000,000 as a result "clearly imply" that she was a registered voter. Resp. at 2. It is not enough for pleadings to "imply" the basic eligibility requirements to participate in the Program that a litigant seeks to challenge in federal court. Instead, "the plaintiff must clearly allege facts demonstrating each element" of standing. *E.g.*, *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted) (cleaned up). Plaintiff's failure to do so here defeats her standing.

Plaintiff shrugs off this fatal flaw as "easily curable through an amended complaint" and makes an offhand request to amend should the Court find that she has failed to adequately allege eligibility for the Program. Resp. at 3. But "[a] request for a court order must be made by motion,"

1

and that motion must "state with particularity the grounds for" the relief sought. Fed. R. Civ. P. 7(b)(1)(A)–(C). Granting such a request where the Plaintiff has not so moved for leave to amend would not be procedurally proper. Even if Plaintiff filed such a motion, it would not be substantively proper and should be denied for futility, for the reasons in the Motion and below. *See, e.g.*, *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021) (noting that district courts may deny leave to amend if amendment would be futile).

### b.    Plaintiff cannot overcome her failure to plead injury in fact.

Plaintiff claims that her "injury is [] disclosure of her PII (by which Defendants profited) under the false promise of a chance to win $1,000,000." Resp. at 3. As the Motion (at 6–12) explains, this does not allege injury for purposes of Article III standing. The Response's arguments to the contrary fail for at least two independently sufficient reasons.

**First**, Plaintiff likens her allegations to "cases involving fraudulent lotteries or giveaways." Resp. at 3. But the Complaint does not allege facts to support the legal conclusion that Defendants represented the Program as a "lottery." That is because the facts alleged cannot support a finding of chance or prize—each of which is an essential element of a lottery. Tex. Penal Code § 47.01(7). The Motion (at 1–2, 5–6, 16–17) discusses this at length. The Response (at 8, and apparently in a retroactive attempt to plead fraud with particularity under Rule 9(b)) finally does specify the two statements this case is based on: Musk's statement at an October 19, 2024 America PAC town hall, and America PAC's statement on X later that night. This attempt to clarify the basis for this case further emphasizes that the Program does not include the elements of "chance" or "prize."

There was no "prize" because money was paid in exchange for verified petition referrals and—for those selected—fulfillment of a spokesperson contract. Compl. ¶ 10, 12 (citing @America, X (Oct. 19, 2024, 11:06 PM), https://x.com/america/status/1847851986495881434).

Musk's October 19 statement made this plain: "The only thing we ask ***for the million dollars*** is that ***you be a spokesperson*** for the petition." *Id.* ¶¶ 12, 16 (quoting @America, X (Oct. 19, 2024, 11:06 PM)) (emphasis added). America PAC X's post also expressly stated that eligible petition signers would be "***selected to earn*** $1 MILLION." *Id.* ¶ 17 (quoting @America, X (Oct. 19, 2024, 11:58 PM), https://x.com/america/status/1847864967816511758) (emphasis added). Both Musk's statement and the X post's express text describe an opportunity to earn rather than a chance to win a prize. There was also no "chance"—instead, people received money through the Program because they either (1) referred an Eligible Voter to sign the petition; or (2) were an Eligible Voter who signed and performed a spokesperson contract. *Id.* ¶¶ 10, 12, 16, 17; *see also* Mot. at 3–5.

Plaintiff insists (presumably in an effort to plead consideration) that her name, email, mailing address, and phone number have value, and that she "purchased" her entry in an alleged lottery by providing this information. Resp. at 3–4. But consideration—even if present—would not create a lottery without the elements of prize and chance also being present. Tex. Penal Code § 47.01(7).

To the extent that Plaintiff attempts to re-cast her flawed "lottery" theory as a theory that Defendants promised a "giveaway," this does not cure her failure to state injury. As just discussed, there was always a requirement to do something in exchange for a payment from America PAC. Neither of the statements Plaintiff claims to have relied upon promises to "give away" something for nothing. Tellingly, the only legal authority in this part of the Response is from a Colorado state court, which Plaintiff makes no effort to analogize to the facts alleged here.

**Second**, the Response's theory (at 4) that "[t]he loss of the monetary value of Plaintiff's proprietary information is by itself a legally cognizable harm," fails because (i) it lacks legal support from the Fifth Circuit or any court therein; and (ii) the facts alleged cannot sustain it. The Response (at 4) posits that Plaintiff's name, email, mailing address, and phone number "can be

used by Defendant [*sic*] to profit thereby through use or sale," and that such information's "value

was diluted when Defendant [*sic*] obtained it unlawfully."[1] Under the litany of precedent discussed

in the Motion (at 7–12), this does not state injury. Rather, as this Court recently noted, courts in

the Fifth Circuit are "skeptical" of this "diminution-of-value" theory of injury. *In re ESO Sols.,

Inc. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 WL 4456703, at *6–7 (W.D. Tex. July 30, 2024).

    *In re ESO* is instructive. In considering allegations that a putative class's "Private

Information, which has an inherent market value in both legitimate and dark markets, [was]

damaged and diminished by its compromise and unauthorized release," this Court recognized that

> District courts nationwide are split on whether diminution of PII constitutes a concrete
> injury. One court in Maryland noted that "the growing trend across courts that have
> considered this issue is to recognize the lost property value of this information."
> However, district courts in Texas have been more skeptical, with at least three
> dismissing similar "loss-of-value" claims.
>
> Even if diminished PII we[re] cognizable in the Fifth Circuit, Plaintiffs do not plausibly
> show their PII has diminished in value. Plaintiffs fail to allege that they attempted to or
> would have ever sold their PII. Nor do they allege that if they now attempted to sell
> their PII, they would be forced to accept a diminished price for it. Most problematically,
> Plaintiffs fail to plausibly show that their information is (or was) being actively
> distributed on the dark web or any other marketplace for private information. The PII
> was stolen from ESO, but Plaintiffs have not plausibly alleged it has been distributed
> any further. **Until Plaintiffs plausibly allege the actual distribution of their
> information, they cannot viably claim that their PII has diminished in value**.

*Id.* at *6–7 (emphasis added) (quoting *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,

440 F. Supp. 3d 447, 461 (D. Md. 2020) and collecting authorities). *See also Ellis v. Cargill Meat

Sols.*, No. 4:22-CV-864-Y, 2023 WL 9547632, at *5 (N.D. Tex. Oct. 31, 2023) (rejecting

---

[1] Plaintiff trivializes her failure to satisfy Rule 9(b) insofar as she alleges supposedly fraudulent
conduct by one "'Defendant' rather than the plural 'Defendants.'" Resp. at 7. Yet the Response (at
4) persists in referring to a single "Defendant's" alleged access to Plaintiff's information, as well
as a single "Defendant's" alleged ability to "profit thereby through use or sale." As the Motion (at
13-16) explains, allegations "failing to segregate the alleged wrongdoing of one [defendant] from
those of another do not meet the requirements of Rule 9(b)." *In re Urcarco Sec. Lit.*, 148 F.R.D.
561, 569 (N.D. Tex. 1993), *aff'd, Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).

diminution-of-value theory of injury where plaintiff made "vague references" to "unauthorized charges" and "credit inquiries" but "aver[red] no further factual detail as to how the value of his information was diminished") (subsequent history omitted); *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *7 (S.D. Tex. July 18, 2024) (rejecting diminution-of-value theory of injury where plaintiff "failed to allege facts indicating how the value of his personal information has decreased"); *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 422 (S.D. Miss. 2024) (holding that "plaintiffs' claims of injury-in-fact based on lack of benefit-of-the-bargain and diminished value of private information are not well-taken" where "[t]here is no allegation that any of the plaintiffs paid a certain amount of money to [defendant] in exchange for protection of their private information or that they intend to sell their private information.") (citations and subsequent history omitted).

*In re ESO* and the authorities it cites emphasize Plaintiff's failure to plead injury on a diminution-of-value theory. Even if she identified any legal support for this theory from a sister district court or the Fifth Circuit (she does not), she does not explain how the value of her information has supposedly decreased. In fact, the Complaint's only allegation regarding Defendant's use of her information is speculative: "Defendants *can profit off* the use/sale of Plaintiff's PII." Compl. ¶ 34 (emphasis added). The Complaint does not say that Defendants *are* doing this; it does not specify any way Defendants allegedly have used or are using her information *for anything at all*. Speculative allegations like this cannot support standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438 (2021).

Attempting to add new facts, the Response (at 6) protests that Defendants "used Plaintiff's information for their own commercial and political benefit." This does not cure the failure to allege injury. To the extent that this refers to the allegation that "Defendants profited off of the valuable

consideration provided by Plaintiff [] by driving traffic and attention to Musk's X Platform," Compl. ¶ 34, Plaintiff states no facts tying her signature on the petition to increased X traffic. (More to the point, it is axiomatic that a third-party's decision to visit X does not injure Plaintiff). Nor does Plaintiff's decision to provide "[h]er signature/support" on the petition state injury. Compl. ¶ 35. Indeed, Plaintiff does not deny that she supports the First and Second Amendments, as she pledged. Moreover, with respect to Plaintiff's suggestion of improper "political benefit," "[i]n the context of the right to vote, courts have found standing when voters were denied the right to cast a ballot or when their votes were mathematically diluted by the method of election." *Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023) (citations omitted) (cleaned up). Plaintiff does not claim interference with any such voting-related right.

Finally, while the Response (at 6) vaguely asserts that "Defendants' actions also amount to misappropriation," Plaintiff does not claim that she was unaware how her information might be used when she signed the petition, and she does not allege any specific use of that information—authorized or otherwise—by Defendants or anyone else. *See* Mot. at 3–4 (describing information collected on the petition and America PAC's disclosures and privacy policy).

Most fundamentally, Plaintiff does not allege that (1) that she "attempted to or would have ever sold" this information; (2) that—if she "now attempted to sell" this information—she "would be forced to accept a diminished price for it;" or, (3) that this information "is (or was) being actively distributed on the dark web or any other marketplace for private information." *In re ESO*, 2024 WL 4456703, at *7. "Until [a] Plaintiff[] plausibly allege[s] the actual distribution of their information, they cannot viably claim that their PII has diminished in value." *Id.* Plaintiff has not attempted to do so here. This is fatal to her standing.

The Response cites twelve district court cases from outside the Fifth Circuit in an attempt to escape this conclusion. Unsurprisingly, none supports a different result. Rather, Plaintiff's primary argument is based on the *In re Marriott* case that this Court distinguished in *In re ESO*, and its underlying theory that a plaintiff can assert injury on a diminution-of-value theory. *Compare, e.g.*, *In re ESO*, 2024 WL 4456703, at *6; *with Rodriguez v. Mena Hospital Comm'n*, No. 2:23-cv-2002, 2023 WL 7198441 (W.D. Ark. Nov. 01, 2023) ("recognizing the lost property value of personal information," but noting "some cases" outside that district "where courts have granted motions to dismiss" similar allegations); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (concluding that "plaintiffs who suffered a loss of their personal information suffered economic injury and had standing," while noting the Ninth Circuit's uniqueness among appellate courts insofar as it has recognized an alleged "loss of [] personal information" as sufficient to state Article III injury); *In re Yahoo! Inc. Customer Sec. Data Breach Litig.*, No. 16-2752, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (similar); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 785 (N.D. Cal. 2019) (similar); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1016 (N.D. Cal. 2024) (similar); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *16 (N.D. Cal. Dec. 22, 2021) (similar); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 875 (N.D. Cal. 2024) (discussing "split of authority" and "no binding Ninth Circuit precedent" on whether "the loss of personal information through [a defendant's] data collection [is] sufficient to qualify as the diminution of a future property interest"). Plaintiff's cherry-picking of language from these cases cannot save her case.

The other cases in the Response similarly fail to support Plaintiff's theory of injury. Rather, they show a pattern of "hesitancy" similar to that recognized in *In re ESO*, finding Article III injury only based on allegations substantially different from those here. *See, e.g.*, *In re Mednax Servs.*,

*Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203–1204 (S.D. Fla. 2022) (holding that "a plaintiff could base injuries in fact on actions related to the mitigation of future harms" where they "allege a substantial and *imminent risk of future identity theft*," but not "if the risk of harm to plaintiffs is not substantial.") (emphasis added); *In re Am. Fin. Res., Inc. Data Breach Litig.*, No. 2:22-CV-01757-MCA-JSA, 2023 WL 3963804, at *5, n.7 (D.N.J. Mar. 29, 2023) ("other than an increased risk of identity fraud, [plaintiff] alleges (1) diminished value of his PII, (2) lost time on mitigation efforts, and (3) lost 'benefit of the bargain' with [Defendant]. *None of these are sufficient without allegations [of] actual or imminent misuse of his PII to confer standing*.") (emphasis added); *In re NCB Mgmt. Servs.*, No. 23-1236, 2024 U.S. Dist. LEXIS 163260, at *27 (E.D. Pa. 2024) (finding standing where a plaintiff pled "that their exposure to the risk of future harm has caused them separate, concrete harms"); *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (rejecting the "[p]laintiffs further attempt to prop up their standing argument on the theory that [a] Data Breach has diminished the 'value' of their Personal Information" because, "without particularized allegations the [plaintiffs' information] were actually accessed or misused, these plaintiffs cannot plausibly allege that their information suffered any decrease in value.").

Even *In re Marriott*—which the Response (at 6) quotes heavily—does not neatly support Plaintiff's theory of injury. Rather, the District of Maryland there noted that "The Fourth Circuit has not decided whether the loss of property value in personal identifying information constitutes a cognizable injury in data breach cases," and that "two courts in this district have taken a contrary view" to the approach that *In re Marriott* adopted. *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d at 461.

Plaintiff adds nothing to her argument by citing some of the foregoing cases for the proposition that injury is "frequently found in circumstances where the defendants collected

information that was itself monetized and used for commercial purposes." Resp. at 5 (quoting *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *10). That is because each of these cases is predicated on her diminution-of-value theory of injury, which lacks both legal and factual support. Relevant here, the Complaint alleges *nothing* about how Defendants allegedly "monetized" her information or "used it for commercial purposes." *Id.*[2]

## II.    The response cannot cure Plaintiff's failure to plead fraud with particularity.

After abandoning her DTPA claim (Resp. at 14), only Plaintiff's fraud and breach-of-contract claims remain. She insists that her fraud claim satisfies heightened pleading under Rule 9(b), and that her breach of contract claim is not subject to Rule 9(b), but she cites essentially no relevant legal authority for either proposition. Defendants stand on their Motion on these points.

## III.   The response cannot cure Plaintiff's failure to plead a plausible claim.

On a motion to dismiss, courts consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Plaintiff's response to Defendants' 12(b)(6) arguments is primarily based on the theory that—rather than following this standard—Defendants are really "ask[ing] the Court to make factual findings" in their favor. Resp. at 1. But Plaintiff does not identify any purported "factual finding" that would be necessary to dismiss this case under Rule 12(b)(6). Rather, Defendants' arguments are based upon the facts alleged in the Complaint, keeping in mind that a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement," and "the

---

[2] After all, as a political committee exempt from taxation under 26 U.S.C. § 527, America PAC is operated primarily for political purposes. And, while Musk is well-known for his business activities, none of his businesses is a Defendant here. Rather, Musk is named personally, and his personal purposes are distinct as a matter of law from the "commercial purposes" of his businesses.

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (cleaned up).

    **a.**    **No factual finding is necessary to conclude that Plaintiff's fraud claim fails for lack of a false representation and justifiable reliance.**

Defendants do not ask the Court to find, as a factual matter, "whether the word 'random,' as used by Musk in his statement on October 19, 2024, properly describes a lottery." *Contra* Resp. at 3. There is no factual dispute about what Musk said in his October 19 statement; it appears in the video the Complaint incorporates by reference. Nor, for that matter, is there factual dispute about the text of the America PAC X post that forms the remaining basis for the Complaint. Resp. at 8. Defendants simply urge the Court to dismiss the fraud claim because the undisputed contents of these statements—as a *legal* matter and as quoted by Plaintiff herself—do not describe a "lottery." Compl. ¶¶ 16, 17; *see supra* at 2–3; Mot. at 6–12. While this may require a legal finding, it does not require a factual one.

Defendants' argument that Plaintiff won't be able to show justifiable reliance is similarly based on the pleadings and asks the Court to conclude that no reasonable person could have relied upon the (undisputed) assertions in the two statements at issue to conclude that Defendants were operating a lottery. *Cf.* Resp. at 12–13. This, too, does not require any finding of fact.

    **b.**    **No factual finding is necessary to dismiss Plaintiff's breach-of-contract claim**.

Plaintiff's only attempt to overcome a 12(b)(6) dismissal of her breach-of-contract claim is premised on the legal conclusion that—based on the "expressed intent" of the parties, determined by an "objective standard"—America PAC's statement on X and Musk's statement at the October 19 town hall "were false," because those statements promised to operate "a genuine lottery." Resp. at 13; *see also* Resp. at 14 (claiming that "a lottery is what [Defendants] described to eligible voters."). Here, it is Plaintiff who ignores the appropriate standard: the Court need not take these

legal conclusions as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. at 678. Instead, it should examine the undisputed factual contents of the allegedly actionable statements Plaintiff invokes and determine—as a legal matter—whether Defendants "expressed" an "intent" to operate a lottery and contract with Eligible Voters for their participation therein. Defendants respectfully submit that the Court should answer this question in the negative.

CONCLUSION

For the foregoing reasons and those in Defendants' Motion to Dismiss (ECF No. 5), this case should be dismissed in its entirety.

Respectfully submitted,

*/s/ Anne Maire Mackin*
Anne Maire Mackin
Texas State Bar No. 24078898
Lex Politica PLLC
P.O. Box 341016
Austin, TX 78734
Telephone: 512-354-1785
amackin@lexpolitica.com

*/s/ Andy Taylor*
Andy Taylor
Texas State Bar No. 19727600
Andy Taylor & Associates, P.C.
2628 Highway 36S, #288
Brenham, Texas 77833
713-412-4025 (mobile)
ataylor@andytaylorlaw.com

**COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

On March 5, 2025, I hereby certify that I served the foregoing document on all counsel of

record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Anne Maire Mackin*
Anne Maire Mackin