IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JACQUELINE MCAFERTY, individually §
and on behalf of all others similarly situated, §
    *Plaintiff,* §
 §
vs. §    No. 1:24-cv-1346
 §
ELON REEVE MUSK & AMERICA PAC, §
    *Defendants.* §

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants Elon Musk and America PAC, by and through their undersigned counsel, respectfully move for summary judgment on Plaintiff Jacqueline McAferty's ("Plaintiff") claims for fraud and breach of contract.

This case arises from America PAC's citizen petition promoting the First and Second Amendments to the United States Constitution ("Petition"). As part of that program, America PAC offered Petition signers the opportunity to earn $1 million if selected to serve as spokespersons for the organization. After she was not selected, Plaintiff filed this action asserting claims for fraud and breach of contract premised on her contention that America PAC's selection process operated in a manner different from what she understood it to be.

The discovery record and undisputed material facts have now confirmed that Plaintiff cannot establish the essential elements of her claims and that Defendants are entitled to judgment as a matter of law. As the record makes clear, Plaintiff testified that she had no knowledge of how $1 million recipients would be chosen when she signed, negating any actionable fraud claim. Plaintiff also cannot identify any definite contractual term that was breached, negating any claim for breach of contract. Her claims as to Mr. Musk also fail for the independent reason that his engagement with the Petition was as an America PAC donor and advocate, not as an America PAC officer or decisionmaker.

1

Under Federal Rule of Civil Procedure 56, summary judgment is required when the nonmovant fails to produce sufficient evidence of essential elements of her claims. Because Plaintiff cannot show misrepresentation, reliance, injury, contract formation, breach, or damages, Defendants are entitled to judgment as a matter of law.

## BACKGROUND

I.    **Undisputed Facts**

   **A. The Petition**

In October 2024, America PAC, an independent expenditure-only political committee, created a petition titled the "Petition in Favor of Free Speech and the Right to Bear Arms" ("Petition"). To sign the Petition and express their support for the First and Second Amendments, individuals entered their name, phone number, email address, and mailing address through an online form.[1]

In addition to the opportunity to sign the Petition, America PAC offered a referral program whereby an eligible registered voter who signed could earn $47 for each eligible individual they referred.[2] The Petition set forth written eligibility criteria for both participation and referral payments.[3] It specified that each person could sign for payment only once, a signer could list only one eligible referrer, and both the referrer and the signer had to be registered voters in one of seven states— Pennsylvania, Georgia, Nevada, Arizona, Michigan, Wisconsin, or North Carolina.[4] America PAC compared submitted information to state voter files to verify eligibility and issue payments.[5]

   **B. The $1 Million Spokesperson Opportunity**

America PAC also offered certain signers the opportunity to earn $1 million as PAC spokespersons. On October 19, 2024, Mr. Musk stated at an America PAC town hall that the PAC

---

[1]  Petiton Page, (Appx.1).
[2] *id.*
[3] *id.*
[4] *id.*
[5] Young Dep. 40:2–10, Feb. 3, 2026, (Appx.2).

would "randomly" offer Petition signers the opportunity to earn $1 million each day until the election.[6] Mr. Musk then announced the first selected Petition signer, John Dreher, and told him, "**The only thing we ask for the million dollars is that you be a spokesperson for the petition**."[7] America PAC shared a video of the announcement on X, then posted, "Every day from now until Election Day, one registered swing state voter who signs the petition will be **selected to earn** $1 MILLION," with a link to the Petition.[8]

The Petition did not suggest that all signers would have the opportunity to earn $1 million as a spokesperson, nor did it state how eligible earners would be chosen for the spokesperson opportunity.[9] America PAC ultimately selected 18 spokespersons and publicized those selections.[10] America PAC's Director and Treasurer, Chris Young, was responsible for spokesperson selection and for overseeing program administration and financial disbursements.[11]

### C. Plaintiff's Participation in the Petition Program

On October 20, 2024, after receiving a group text message from her brother with a link to the Petition, Plaintiff—an Arizona resident—signed the Petition.[12] In doing so, she entered her first and last name, email address, mailing address, and phone number.[13] Plaintiff testified that she had no information regarding how individuals would be selected for the opportunity to earn $1 million.[14] Signing the Petition did not guarantee any payment, and any opportunity to earn $1 million was described as a spokesperson opportunity.[15] Plaintiff had not seen or heard Mr. Musk's remarks at the

---

[6] Compl. ¶ 12 (ECF No. 1).
[7] *id.* at ¶ 16 (emphasis added).
[8] *id.* at ¶ 17.
[9] Petition Page, (Appx.1); *see, e.g.,* McAferty Dep. 41:15–18; 55:3–7; Jan. 20, 2026 (Appx.3).
[10] Earn $1million Petition Page (Appx.7); Young Dep. 57:8–14, Feb. 3, 2026 (Appx.2).
[11] Young Dep. 11:1–25; 12:1–25; 13: 1–18; 14:9–24; 119:15–25; 120:1–7, Feb. 3, 2026 (Appx.2).
[12] McAferty Dep. 87:13–25; 88:1–16, Jan. 20, 2026 (Appx.3); Plaintiff's text message (Appx.3).
[13] McAferty Dep. 34:1–25; 35:1–2, Jan. 20, 2026 (Appx.3).
[14] McAferty Dep. 45:5–8, Jan. 20, 2026 (Appx.3).
[15] *See, e.g.,* Young Dep. (Appx.2) (Young repeatedly describes the opportunity as a "paid spokesperson" role and references a "spokesperson consulting agreement.")

October 19, 2024, town hall when she signed, and cannot identify any particular representation made by either Defendant that she had reviewed at the time she signed.[16] She testified as follows:

Q. Okay. Had you seen any rally videos related to the petition?

A. Prior to the petition, I don't believe so. Prior to me signing the petition, I don't believe so.[17]

Plaintiff further testified that any subsequent belief she developed regarding spokesperson selection arose from information she heard in the news after she signed the Petition.[18]

Eligibility required verification against the state voter file. Here, the information Plaintiff entered when she signed the Petition could not be matched to the Arizona voter file.[19] As a result, she was not eligible to earn compensation for referring others to sign the Petition or to be selected for the opportunity to earn $1 million as a spokesperson.[20]

## **LEGAL STANDARD**

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A defendant who would not bear the burden of proof at trial need only "point[ ] out…that there is an absence of evidence to support the nonmoving party's case," at which point the burden shifts to the nonmovant to produce competent evidence showing a genuine issue for trial. *See, e.g.,* Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 322–25; *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.,* 783 F.3d 527 (5th Cir. 2015). Conclusory assertions, speculation, or a "mere scintilla of evidence" will not

---

[16] McAferty Dep. 26:16-25 , Jan. 20, 2026 (Appx.3).
[17] *id.*
[18] McAferty Dep. 55:8–25; 56:1–4, Jan. 20, 2026 (Appx.3).
[19] Sceusa Dec. at ¶ 8 (Appx.9).
[20] *See* Young Dep. 40:2–10, Feb. 3, 2026 (Appx.2).

suffice for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986); *see also Matsushita Elec. V. Zenith*, 475 U.S. 574, 586 (1986)("must do more than simply show that there is some metaphysical doubt as to the material facts.") "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999); *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013).

## ARGUMENT

### I.   Plaintiff Lacks Article III Standing Because She Was Never Eligible to Be Selected as a Spokesperson for America PAC.

"Federal courts do not possess a roving commission to publicly opine on every legal question," nor do they "exercise general legal oversight…of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Rather, Article III of the Constitution requires a plaintiff to demonstrate that they have: (1) suffered an injury in fact; (2) that is traceable to the defendant's challenged conduct; and, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This standing inquiry is not established by misunderstanding, dissatisfaction, or disappointment. *See, e.g., id.*

Plaintiff lacks standing because she was never eligible for the $1 million spokesperson opportunity she claims to have lost. Petition signers did not become eligible for the spokesperson opportunity unless their submission matched the state voter file.[21] Because the information Plaintiff submitted on the Petition could not be matched to an Arizona registered voter record, she never qualified for referral payments or selection as a paid spokesperson.[22] The spokesperson opportunity,

---

[21] Young Dep. 40:2–10, Feb. 3, 2026 (Appx.2).
[22] *See* Sceusa Dec. at ¶ 8 (Appx.9).

while discretionary, was limited to individuals who satisfied threshold criteria—including matching a valid voter registration.[23]

These distinctions foreclose standing. Although Plaintiff does not claim she was denied any referral payment, eligibility for both referral payments and consideration for the $1 million spokesperson opportunity was contingent on satisfying the same eligibility requirements – requirements she never met. Plaintiff therefore cannot establish a concrete injury based on not receiving Petition program benefits. Any alleged loss of the opportunity to earn $1 million or referral compensation is "speculative" or "hypothetical" because she was not part of the qualifying pool in the first place. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (rejecting standing based on speculative or hypothetical allegations of injury).[24]

Plaintiff's ineligibility also defeats causation and redressability. Indeed, Plaintiff cannot demonstrate that any alleged action by a Defendant caused her to lose a benefit for which she never qualified. A favorable ruling would not place her in a position to receive referral compensation or the spokesperson opportunity. Nor would a favorable ruling remedy any alleged misuse of her information, as Plaintiff admits she has no knowledge that her information was sold, disclosed beyond what she already knew, or otherwise used in a manner that caused her harm.[25]

Additionally, Plaintiff's theory also fails for an independent traceability reason. To the extent she relies on Mr. Musk's use of the word "randomly" at the October 19, 2024, town hall, she admits she had not seen or heard those remarks when she signed the Petition.[26] A statement unknown to Plaintiff

---

[23] Young Dep. 40:2–10, Feb. 3, 2026 (Appx.2).

[24] Plaintiff also cannot establish economic injury. She did not pay to sign the Petition, relinquished no legal right, and was not deprived of funds to which she was entitled. The absence of eligibility forecloses any claim of out-of-pocket loss, lost entitlement, or measurable financial harm.

[25] McAferty Dep. 40:11–25; 41:1–13; 81:25; 82:1–25; 83:1–3, Jan. 20, 2026 (Appx.3); AmericaPAC Privacy Policy (Appx.10).

[26] McAferty Dep. 26:16-25, Jan. 20, 2026 (Appx.3).

at the time of her decision cannot have caused her alleged injury. *See Id.* Any claimed loss of opportunity therefore is not fairly traceable to that remark. *Id.*

Article III's requirements also do not relax in putative class actions: the fact that a suit is a class action "adds nothing to the question of standing," because "even named plaintiffs who represent a class must allege and show that they personally have been injured." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "[I]n a class action, 'federal courts lack jurisdiction if no named plaintiff has standing.'" *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022) (quoting *Frank v. Gaos*, 586 U.S. 485, 492 (2019) (per curiam)).

Because Plaintiff lacks Article III standing, the Court should grant summary judgment.

## II. The Court Should Enter Summary Judgment on Plaintiff's Fraud Claim Because She Cannot Show its Essential Elements.

Even if Plaintiff had standing, the Court should enter summary judgment dismissing her fraud claim because she cannot show several of its essential elements.

> To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (cleaned up).[27]

Fraud is evaluated based on what existed at the time of the alleged inducement. *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228–29 (Tex. 2019) The Court must take a snapshot of the representations in existence at the moment Plaintiff signed the Petition and not statements made later, not media commentary, and not *post hoc* interpretations. *See Grant Thornton LLP v. Prospect*

---

[27] At the Motion to Dismiss stage, no party argue that Arizona law rather than Texas law governs the fraud claim here. *Accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir.), modified on denial of reh'g, 355 F.3d 356 (5th Cir. 2003). Regardless, even if Arizona law applied to that claim, the substantive standard for fraud is materially the same. *See, e.g., Dawson v. Withycombe*, 216 Ariz. 84, 96, 163 P.3d 1034, 1046 (Ct. App. 2007).

*High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). At the moment Plaintiff signed, the only operative document was the Petition itself. Plaintiff testified that she had no knowledge of Mr. Musk's October 19 remarks when she signed.[28] Accordingly, any theory premised on those later remarks fails as a matter of law for lack of reliance.

### A. Plaintiff Cannot Establish a Material Misrepresentation of Fact

This case begins and ends with context. Plaintiff's fraud claim rests on remarks made in the course of core First Amendment expressive and associational activity at a town hall to bring visibility to a petition supporting constitutional rights.  Fraud, on the other hand, requires a materially and demonstrably false representation of existing fact. *Italian Cowboy P's, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 337 (Tex. 2011). The representation must be specific, definite, and objectively verifiable. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). Statements of opinion, puffery, or generalized promotional language are not actionable misrepresentations of material fact. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995); *see also Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986). That is because such statements lack the precision and concreteness required to determine truth or falsity. *See Transport Ins. Co*, 898 S.W.2d at 276.

In the context of core First Amendment activity, courts evaluate whether speech can reasonably be construed as asserting verifiable fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).[29] The record shows multiple independent reasons why Plaintiff cannot meet this standard and demonstrate a materially false representation.

First, America PAC did not misrepresent any fact regarding how it would select paid spokespersons, because it did not promise selection by any particular method. The Petition page set

---

[28] McAferty Dep. 26:16-25, Jan. 20, 2026 (Appx.3).
[29] *See generally Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 357 (Tex. 2023) (finding that a defendant did not commit defamation by "making statements that equate abortion to murder and by characterizing those who provide or assist in providing abortion, including the plaintiffs, as 'criminal' based on that conduct.").

forth written eligibility rules governing who could become eligible to earn referral payments.[30] Those criteria did not describe a spokesperson selection process, promise spokesperson selection by any specific method, or limit America PAC's discretion in hiring paid spokespersons. Plaintiff herself admits that the Petition page—the only representation before her when she signed—did not contain the words "drawing," "lottery," "chance," or "sweepstakes."[31] The later public remarks by America PAC referenced an opportunity to earn $1 million as a spokesperson. An opportunity to earn that is conditioned on discretionary selection and service is categorically different from a chance to win. The law does not permit courts to imply procedural guarantees that were never expressed. *See, e.g.*, *Italian Cowboy,* 341 S.W.3d at 337 (fraud requires proof of a specific, material representation rather than an implied assurance).

Second, the spokesperson opportunity was governed by discretionary considerations. These included geographic proximity to upcoming events, prior referral activity, voting status, background checks, and assessments of whether an individual would be an effective representative.[32] Nothing in the Petition's written terms restricted America PAC's discretion in that regard, and Plaintiff identifies no representation that imposed such a limitation. Absent a specific representation restricting discretion, no such limitation exists. *Id.*

Third, Plaintiff does not contend that the Petition's written eligibility criteria were false or misleading. Instead, her fraud theory depends on recasting generalized advocacy language as a technical guarantee about an internal process that was never required to be defined, quantified, or publicly described. Texas law does not permit a fraud claim to proceed on such generalized language. *See Jefferson Assocs.*, 896 S.W.2d at 163; *Presidio,* 784 F.2d at 679. Moreover, Plaintiff admitted that her

---

[30] Petition Page, (Appx.1).
[31] McAferty Dep. 38:19–25; 39:1–2, Jan. 20, 2026 (Appx.3).
[32] Young Dep. 42:19–25; 43:1–25; 44:1–25; 45:1–25; 46:1, Feb. 3, 2026 (Appx.2).

subjective personal belief that she had a "chance" to earn $1 million was not based on any statement by America PAC, but on her own interpretation.[33]

Fourth, to the extent that Plaintiff's fraud claim is based upon Mr. Musk's use of the word "randomly" at the October 19, 2024 town hall, Plaintiff had not seen or heard those remarks when she chose to sign the Petition.[34] Thus, even if one were to (1) ignore Mr. Musk's explicit representation that the $1 million payment was contingent on service as a spokesperson; and, (2) assume that the stray use of the word "randomly" as a representation of a fixed selection methodology rather than a colloquialism; the use of that word *could not* form the basis of any misrepresentation that induced the Plaintiff to sign, since she did not even know about it at that time.

Fifth, even setting aside Plaintiff's lack of reliance, the record does not support that Mr. Musk's remarks were false. Rather, it shows that the selection process retained an element of randomness at its inception. America PAC did not pre-identify specific individuals far in advance. In practice, potential recipients were drawn from a large, undifferentiated broader pool of eligible signers within a particular state and then narrowed through discretionary considerations thereafter with final determinations made proximate in time to the relevant announcement date.[35] This further defeats any assertion that the term "randomly" was false. In fact, even Plaintiff acknowledged that the selection process included some element of uncertainty.[36]

Finally, to the extent Plaintiff relies on remarks made by Mr. Musk, the record contains no evidence that he possessed authority to bind America PAC with respect to the Petition program. The undisputed evidence reflects that Mr. Musk was a donor to and advocate for America PAC, not an officer or authorized decisionmaker. That exclusive authority over program administration and

---

[33] McAferty Dep. 44:1–16, Jan. 20, 2026 (Appx.3).
[34] McAferty Dep. 26:16-25, Jan. 20, 2026 (Appx.3).
[35] Young Dep. 42:19–25; 43:1–25; 44:1–25; 45:1–25; 46:1, Feb. 3, 2026 (Appx.2).
[36] McAferty Dep. 50:3–17, Jan. 20, 2026 (Appx.3).

financial disbursements rested solely with Mr. Young.[37] Therefore, Plaintiff has not established that any remark by Mr. Musk constituted an authorized representation on behalf of America PAC.

Since Plaintiff cannot identify a materially false representation of fact, her fraud claim fails.

### B. Plaintiff Cannot Establish Knowledge of Falsity

There is also no evidence that any statement at issue was known to be false when made or was asserted without knowledge of its truth. *FirstMerit*, 52 S.W.3d at 758. At its core, Plaintiff's fraud theory rests entirely on the *post hoc* assertion that the errant use of the word "randomly" was inaccurate; however, at most, the record reflects imprecise language, not a knowingly false statement of material fact. The corporate representative for America PAC testified that he was surprised to hear Mr. Musk describe the selection as "randomly," confirming the absence of any coordinated effort to misrepresent a defined process.[38] That testimony defeats any inference of contemporaneous intent to deceive. Additionally, Plaintiff admits that her belief that the process was not random did not arise from any statement by America PAC, but from media coverage after the fact.[39] Notably, Plaintiff admits she had no information suggesting America PAC lacked intent to conduct a legitimate selection process when she signed.[40]

Since there is no evidence that Defendants made any statement with knowledge of falsity or reckless disregard for the truth, Plaintiff cannot satisfy the intent requirement of a fraud claim.

### C. Plaintiff Cannot Establish Justifiable Reliance

Fraud further requires proof that the plaintiff actually and justifiably relied on the alleged misrepresentation. *FirstMerit*, 52 S.W.3d at 758. Plaintiff cannot satisfy either requirement.

---

[37] Young Dep. 11:1–25; 12:1–25; 13: 1–18; 14:9–24; 119:15–25; 120:1–7, Feb. 3, 2026 (Appx.2).
[38] Young Dep. 119:4–14, Feb. 3, 2026 (Appx.2).
[39] McAferty Dep. 55:24–25; 56:1–4, Jan. 20, 2026 (Appx.3).
[40] McAferty Dep. 71:19–25; 72:1–3, Jan. 20, 2026 (Appx.3).

First, Plaintiff has not identified any specific representation regarding the method of selection that formed the basis of her decision to sign. The single document Plaintiff produced during discovery is a screenshot of a group text message from her brother that included a link to the Petition and a brief description of it, to which Plaintiff responded that she had signed.[41] She does not identify any representation within that message promising a guaranteed payment or describing a random drawing procedure.[42] Plaintiff also does not contend that she reviewed any defined selection criteria.[43] Plaintiff further admits she did not understand the mechanics of any selection process at the time she signed and did not seek clarification regarding how recipients would be chosen.[44] Plaintiff cannot reasonably rely on a representation she did not understand or attempt to verify. *See Grant Thornton LLP,* 314 S.W.3d at 923.

Second, reliance must be justifiable under the circumstances. *See id.* ("a person may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted.") (citation omitted). Statements made in the course of constitutional advocacy and association must be evaluated in context. The Supreme Court has long recognized that the Constitution protects "statements that cannot 'reasonably [be] interpreted as stating actual facts'" when made regarding public matters, in order to ensure that discourse does not suffer for lack of "imaginative expression" or "rhetorical hyperbole." *See generally Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (citing *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970); *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)). In this setting, a loose, generalized reference to how individuals would be chosen to earn $1 million during a PAC town hall cannot reasonably be interpreted as a technical guarantee of a defined selection protocol.

---

[41] Plaintiff's text message (Appx.8).
[42] McAferty Dep. 87:13–25; 88:1–16, Jan. 20, 2026 (Appx.3).
[43] McAferty Dep. 41:15–18, Jan. 20, 2026 (Appx.3).
[44] McAferty Dep. 53:22–25, Jan. 20, 2026 (Appx.3).

Moreover, a plaintiff may not transform generalized advocacy language into a legally enforceable guarantee, particularly where the plaintiff concedes the messaging lacked detailed criteria. *See generally Jefferson Assocs.,* 896 S.W.2d at 163. Plaintiff's own testimony confirms she understood she had no guaranteed outcome.[45] An acknowledgment of uncertainty is incompatible with proof of justifiable reliance on a definite factual representation. *See Grant Thornton LLP,* 314 S.W.3d at 923.

Furthermore, any asserted reliance on the notion that the $1 million opportunity functioned as a mechanical lottery would not have been objectively reasonable under Texas law. Justifiable reliance is evaluated under an objective standard, and a plaintiff may not disregard information that contradicts her asserted interpretation. *See Id.* In the same October 2024 town hall Plaintiff relies on, Mr. Musk expressly stated that any $1 million payment was conditioned on the recipient serving as a "spokesperson for the petition."[46] Early recipients were announced live at public town halls and identified as individuals present at those events. Public posts described recipients as being "selected to earn $1 MILLION," not as winners of a drawing or sweepstakes.[47] These contextual features are inconsistent with a fixed, chance-based lottery structure and preclude any objectively reasonable belief that a defined mechanical protocol had been promised.

Because Plaintiff cannot demonstrate actual *or* justifiable reliance, her fraud claim fails.

### D. Plaintiff Cannot Establish Causation or Injury

A fraud claim requires proof that a plaintiff's reasonable reliance on a false representation caused injury. *FirstMerit,* 52 S.W.3d at 758. In its order on Defendants' motion to dismiss, the Court found that, here, "Plaintiff's injury was that she allegedly provided Defendants her PII as consideration for a chance to win $1 million—something she would not have done had she known that Defendants'

---

[45] McAferty Dep. 36:7–9, Jan. 20, 2026 (Appx.3).
[46] Compl. ¶ 16 (ECF No. 1).
[47] X Posts (Appx. 4-6).

representations of the program were fraudulent."[48] Discovery has revealed several independently sufficient reasons why Plaintiff cannot prove such an injury.

**First**, Plaintiff acknowledged that the Petition's written eligibility rules that she saw when she signed were *not* false, let alone fraudulent.[49] **Second**, Plaintiff voluntarily provided her contact information to sign a petition that she agreed with; this conduct is consistent with the Petition's purpose, and with Plaintiff's own motivations in signing.[50] **Third**, Plaintiff was not denied any expected benefit. Instead, she never even became eligible for referral payments or the spokesperson opportunity, because her signature could not be matched to voter registration records.[51] The requirement to be a verified, eligible registered voter in a selected state to earn through the Petition program is not disputed, nor is it alleged to have been misrepresented. Furthermore, Plaintiff admits she has no knowledge that her information was sold, misused, or otherwise monetized in a way that caused her harm.[52] She cannot identify any out-of-pocket loss, any lost opportunity, any benefit she was told she would receive, any change in legal position, or any economic detriment resulting from signing the Petition.[53]

Mr. Young—who has worked in political operations for approximately 19 years and has extensive experience with voter-file acquisition and campaign data practices—[54]confirms that voter registration information of the type Plaintiff provided has *de minimis* to zero independent market value. Mr. Young testified that voter-file data is commercially available for nominal cost, and in many instances is obtainable directly from state voter rolls at minimal or no charge.[55] He further explained

---

[48] Order at 19 (ECF No. 25).
[49] McAferty Dep. 41:15–18; 57:10–12; 77:14–19, Jan. 20, 2026 (Appx.3).
[50] McAferty Dep. 34:8–25; 35:1–2, Jan. 20, 2026 (Appx.3).
[51] Sceusa Dec. at ¶ 8 (Appx.9).
[52] McAferty Dep. 40:11–25; 41:1–13; 81:25; 82:1–25; 83:1–3, Jan. 20, 2026 (Appx.3): AmericaPAC Privacy Policy (Appx.10);
[53] McAferty Dep. 82:25; 83:1–14, Jan. 20, 2026 (Appx.3).
[54] Young Dep. 109:21–25; 120:1–8, Feb. 3, 2026 (Appx.2).
[55] Young Dep. 110:13–25; 111:1–13, Feb. 3, 2026 (Appx.2).

that America PAC already had that data because it used it to verify eligible petition signatures and issue payments to those who earned them through the Petition program.[56] His testimony therefore reflects industry knowledge and confirms that Plaintiff's asserted "value" theory is inconsistent with the economic realities of voter-file data. It further emphasizes that any person who became eligible to earn for Petition referrals *or* as a spokesperson would already have been known to America PAC through their purchase of voter contact information. Plaintiff's inability to prove injury additionally and independently warrants summary judgment.

Overall, Plaintiff's fraud theory fails in multiple distinct ways: she cannot prove a materially false representation; she cannot prove knowledge of falsity or intent to deceive; she cannot demonstrate justifiable reliance; and she cannot establish cognizable damages. The absence of evidence on any one of these elements is fatal. The absence of evidence on all of them compels summary judgment.

## II. Plaintiff's Contract Claim Fails Because the Record Defeats its Essential Elements.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).[57] A valid contract, in turn, requires a definite offer, acceptance, mutual assent to essential terms, and consideration. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). At the summary-judgment stage, the absence of evidence on any essential element is dispositive. *E.g.*, *Celotex*, 477 U.S. at 322–23.

The record does not support a finding of contract formation, breach, or damages.

### A. No Definite Offer and No Mutual Assent

---

[56] Young Dep. 111:14–23; 112:7–17, 113:14–25, Feb. 3, 2026 (Appx.2).

[57] At the Motion to Dismiss stage, neither party argued that Arizona law rather than Texas law governed Plaintiff's breach of contract claim. Regardless, the substantive standard for breach of contract is materially the same. *See, e.g.*, *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, 302 P.3d 617, 621 (2013).

A legally enforceable offer must contain sufficiently definite and certain terms so that a court can ascertain the parties' obligations. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Indefinite promotional language or generalized opportunity statements do not constitute binding offers. *See Doe v. Emory Univ.*, No. 1:20-CV-2002-TWT, 2021 WL 358391, at *5 (N.D. Ga. Jan. 22, 2021) ("…promotional statements are essential advertising materials, which do not constitute offers to form express contracts…").

The Petition page —the only statement from America PAC available to Plaintiff at the time she signed—contained no guaranteed payment terms, no defined selection protocol, no mandatory timing mechanism, and no restriction on discretion.[58] It set forth eligibility criteria for signing and for referral payments. It did not promise that any signer would receive $1 million, nor did it describe how any individual would be selected. Plaintiff admits she saw no written rules, criteria, or guarantees governing how $1 million recipients would be chosen.[59] She further testified that she had no information about how selections would actually be conducted when she decided to sign.[60] Those admissions alone defeat mutual assent, because a party cannot assent to terms that were never defined or communicated.

Most importantly, Plaintiff expressly disclaimed any understanding that she was entering into a contract. When asked about her understanding at the time she signed, she testified:

> Q. Okay. At the time you signed the petition, what was your understanding of whether you were entering into any kind of agreement with America PAC?

> A. **I didn't regard it as an agreement.**[61]

That testimony is dispositive. She expressly testified that she did not view the interaction as an agreement and therefore cannot establish objective mutual assent as a matter of law. Although contract formation is evaluated under an objective standard, the record contains no definite offer or objective

---

[58] Petition Page (Appx.1).
[59] McAferty Dep. 41:15–18, Jan. 20, 2026 (Appx.3).
[60] McAferty Dep. 55:3–7, Jan. 20, 2026 (Appx.3).
[61] McAferty Dep. 76:8–25, Jan. 20, 2026 (Appx.3) (emphasis added).

manifestation of mutual assent. Plaintiff's own mischaracterization of the opportunities offered by the Petition program underscores the absence of any agreed-upon contractual terms capable of enforcement. *See In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012).

Further, Plaintiff did not seek clarification of any alleged contractual terms before signing, nor did she inquire about selection mechanics, timing, eligibility, or obligations. Texas law requires mutual assent to definite terms at formation; courts do not enforce obligations that were never objectively manifested. See *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (recognizing that contractual rights arise from agreed terms, not post hoc interpretations). Plaintiff identifies no definite selection protocol, mandatory payment trigger, or enforceable commitment existing at the time she signed. Her later characterization of the opportunity cannot supply contractual terms that were never agreed upon.

### B. No Consideration and No Bargained-For Exchange

Even assuming *arguendo* that Plaintiff could identify a definite offer, her claim independently fails for lack of consideration. Consideration requires a bargained-for exchange of mutual obligations. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408–09 (Tex. 1997). Plaintiff admits she paid no money to sign the Petition and neither did she did not subscribe to anything, donate, or relinquish any legal right. [62]

She voluntarily signed a petition expressing support for constitutional rights. That act of civic participation does not constitute commercial consideration supporting a bilateral contract. She assumed no enforceable duty and Defendants assumed no definite payment obligation. Plaintiff's participation afforded her the opportunity to take part in a discretionary promotional initiative. A contingent opportunity subject to discretionary selection does not create a binding payment obligation and cannot serve as a bargained-for consideration. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846.

---

[62] McAferty Dep. 36:1–6, Jan. 20, 2026 (Appx.3).

Moreover, any alleged promise would be illusory. The Petition imposed no enforceable obligation on America PAC to select any particular individual, to select by any particular method, or to pay any specific signer. Under Texas law, a promise is illusory when it fails to bind the promisor and leaves performance entirely within that party's discretion. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676–77 (Tex. 2006) (explaining that a promise that does not actually require performance is unenforceable). Here, because America PAC retained complete discretion over whether to select any signer and under what circumstances, no binding payment obligation arose

Accordingly, no enforceable contract was formed as a matter of law.[63]

### C. No Breach

Plaintiff also cannot identify any specific contractual term that was breached. The record does not support a finding that the written eligibility criteria were false. Nor can it support a finding that Plaintiff became eligible but then was then denied the opportunity to earn $1 million. Plaintiff also cannot identify any express term of any alleged contract guaranteeing selection by random drawing or restricting discretion in selecting spokespersons.[64] Rather, her theory rests entirely on a *post hoc* belief—formed *after* she signed the Petition—that selection did not happen "randomly;" however, she acknowledged that she had no knowledge of how selections were conducted at the time she signed.[65] She further admitted that her belief that the process did not occur randomly arose from later news reporting and not from facts she observed.[66] A belief formed after the fact, based on media reports, cannot establish a contractual term, particularly, where no such term was ever agreed upon.

---

[63] Plaintiff's own characterization of the Petition Program as a private lottery would independently defeat any contract claim. Were that framing correct (it is not), the alleged agreement would be unenforceable under the lottery and public-policy laws of the relevant states. *See, e.g.,* Ariz. Rev. Stat. § 13-3303; 18 Pa. Cons. Stat. § 5512; Ga. Code Ann. § 16-12-22; Nev. Const. art. IV, § 24; Mich. Comp. Laws § 750.372; Wis. Stat. § 945.02(3); N.C. Gen. Stat. § 14-290; Tex. Const. art. III, § 47. Courts in these jurisdictions consistently hold that agreements contrary to such statutes are void and unenforceable. *See, e.g., Zambrano*, 254 Ariz. at 59; *Printfly Corp.*, 305 A.3d 1017; *In re OCA, Inc.*, 552 F.3d at 422.

[64] *See* McAferty Dep. 38:19–25; 39:1–2, Jan. 20, 2026 (Appx.3).

[65] McAferty Dep. 55:3-7, Jan. 20, 2026 (Appx.3).

[66] McAferty Dep. 55:24–25; 56:1–4, Jan. 20, 2026 (Appx.3).

Courts do not imply procedural guarantees that were never expressed. *See generally Italian Cowboy,* 341 S.W.3d at 337; *see also Fort Worth Indep. Sch. Dist.,* 22 S.W.3d at 846. Absent a definite contractual restriction on discretion, none can be inferred. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

### D. No Contract Damages

Plaintiff's lack of standing independently bars recovery; however, even setting standing aside, her breach-of-contract claim fails because she cannot establish the essential element of damages. A breach-of-contract claim requires proof of damages resulting from the alleged breach. *Smith Int'l., Inc.*, 490 F.3d at 387. Plaintiff cannot identify any recoverable contract damages. She paid nothing to participate, was not guaranteed payment, and was not deprived of money to which she was contractually entitled. She further acknowledges that individuals identified as recipients received $1 million and has no reason to believe otherwise.[67]

Plaintiff's claim that she provided her contact information for a "chance" does not establish recoverable contract damages. She identifies no contractual entitlement lost and no economic injury caused by breach of any defined term. See *Formosa Plastics Corp.*, 960 S.W.2d at 49 (damages must compensate for actual loss caused by breach). 960 S.W.2d at 49.

## III.   Mr. Musk's Status as a Donor Independently Precludes Liability.

Plaintiff's claims against Mr. Musk independently fail because the record establishes that he acted as a donor and advocate,[68] and not as an officer, director or authorized decisionmaker. The evidence reflects that authority over program administration, financial disbursements, and spokesperson selection rested solely with Mr. Young.[69] Large donors to independent expenditure-only committees

---

[67] McAferty Dep. 57:10–12, Jan. 20, 2026 (Appx.3).
[68] Young Dep. 119:15–25; 120:1–25; 121:1–5, Feb. 3, 2026 (Appx.2).
[69] Young Dep. 14:9–10; 84:2–9, Feb. 3, 2026 (Appx.2).

frequently appear at events, promote initiatives publicly, and advocate for the committee's objectives.[70] Such advocacy is consistent with ordinary First Amendment expression and does not create agency or operational control.

Under Texas law, the "right of control" is the defining characteristic of an agency relationship. *See Schrum v. Land*, 12 F. Supp. 2d 576, 582 (S.D. Tex. 1997). "[E]ven if a person acts for or accommodates another, if the accommodating person is not under the other person's control, an agency relationship does not exist." *Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio 1992, writ denied). Agency cannot be established solely by the alleged agent's own statements but must be examined through their conduct. *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007)

Plaintiff has produced no evidence that America PAC authorized Mr. Musk to define binding program terms, alter eligibility criteria, or commit the PAC to contractual obligations. Nor has she identified any evidence that Mr. Musk exercised decision-making authority over the internal mechanics of the spokesperson program. Absent proof of actual authority, apparent authority, or operational control, statements made by a donor in the course of core First Amendment activity cannot bind the committee as a matter of law. *See Schrum* 12 F. Supp. 2d at 582.

Therefore, the Court should enter summary judgment dismissing Mr. Musk.

## CONCLUSION

Rule 56 requires more than dissatisfaction, inference, or hindsight interpretation. *See Celotex*, 477 U.S. at 322–23. Discovery is complete and has established that no genuine dispute of material fact remains. Because Plaintiff has failed to carry her burden on fraud or breach of contract, Defendants are entitled to judgment as a matter of law. The Court should grant summary judgment and dismiss this case with prejudice.

---

[70] *See, e.g.,* Young Dep. 119:7–24; 120:4–7, Feb. 3, 2026 (Appx.2).

20

Dated: February 24, 2026

Respectfully submitted,

*/s/ Nadin Rabelo Linthorst*
Nadin Rabelo Linthorst*
New York State Bar No. 5559042
Anne Marie Mackin
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Andy Taylor
Texas State Bar No. 19727600
Lex Politica PLLC
P.O. Box 341015
Austin, TX 78734
Telephone: (512) 354-1785
nlinthorst@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com
ataylor@vantage.network

**COUNSEL FOR DEFENDANTS**

*Admitted* pro hac vice