# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **Jacqueline McAferty,** *individually and on behalf of all others similarly situated,* *Plaintiff* | § § § § | **No. 1:24-cv-01346-RP** |
| **v.** | § § § | |
| **Elon Musk and America PAC,** *Defendants* | § § § § | |
| **Joy Harvick,** *individually and on behalf of all others similarly situated,* *Plaintiff* | § § § § | **No. 1:24-cv-01373-RP** |
| **v.** | § § § | |
| **Elon Musk and America PAC,** *Defendants* | § § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are the following motions:

In *Jacqueline McAferty v. Elon Musk & America PAC*, No. 1:24-cv-1346-RP ("*McAferty*"):

- Defendants' Motion for Summary Judgment, filed February 24, 2026 (Dkt. 37);

- Plaintiff's Motion to Modify Protective Order to Permit Discovery Sharing, filed February 26, 2026 (Dkt. 40);

- Plaintiff's Amended Motion to Extend Scheduling Order, filed February 27, 2026 (Dkt. 41); and

- Plaintiff's Motion to Compel Deposition of Defendant Musk and Supplemental Discovery Responses, and Further Support of Extension of Scheduling Order Based on Defendants' Failure to Supplement Discovery Pursuant to Fed. R. Civ. P. 26(e) and 37(a), filed March 9, 2026 (Dkt. 47);

- Plaintiff's Objection and Motion to Strike the Declaration of Carl Sceusa, filed March 31, 2026 (Dkt. 54);

1

In *Joy Harvick v. Elon Musk & America PAC*, No. 1:24-cv-1373-RP ("*Harvick*"):

- Plaintiff's Motion to Extend Scheduling Order, filed February 24, 2026 (Dkt. 36);
- Plaintiff's Motion to Modify Protective Order to Permit Discovery Sharing, filed February 24, 2026 (Dkt. 37);
- Plaintiff's Motion to Compel Deposition and Responses to Discovery, filed March 6, 2026 (Dkts. 44 (redacted) and 45 (sealed));

and the associated response and reply briefs.[1] On June 23, 2026, the Court held a hearing on all pending referred motions at which all parties appeared through counsel.

## I.    Background

The facts of these cases are recited in Judge Pitman's August 20, 2025 Orders granting in part and denying in part Defendants' motion to dismiss (Dkt. 25 in each case). Plaintiffs Jacqueline McAferty and Joy Harvick bring putative class actions against Defendants Elon Musk and a political action committee he founded, America PAC, over $1 million petition payments before the 2024 election.[2] McAferty and Harvick both brought claims under Texas law for fraud and breach of contract and violations of the Texas Deceptive Trade Practices Act, but Judge Pitman dismissed the latter claim in each case. Harvick also asserts an unjust enrichment claim. Both Plaintiffs seek damages and injunctive relief requiring Defendants to destroy all personally identifiable information ("PII") Plaintiffs submitted to them.

## II.    Order on Discovery Motions

For the reasons stated from the bench during the hearing, the Court:

---

[1] The Honorable Robert Pitman entered Text Orders referring the motions to this Magistrate Judge for disposition of all non-dispositive pretrial motions and findings and recommendations on all case-dispositive motions, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] Plaintiffs allege that this Court has jurisdiction over this putative class action under 28 U.S.C. § 1332(d) and diversity jurisdiction under § 1332(a)(1) because they are citizens and residents of Maricopa County, Arizona, while Musk is domiciled in Travis County, Texas, where America PAC is headquartered.

1. **GRANTS** Plaintiff's Motion to Modify Protective Order to Permit Discovery Sharing (*McAferty* Dkt. 40 and *Harvick* Dkt. 37) and **ORDERS** that the Stipulated Protective Order (Dkt. 36) is **MODIFIED** to permit Plaintiffs to share deposition testimony between *McAferty* and *Harvick*.

2. **GRANTS IN PART** Plaintiff's Amended Motion to Extend Scheduling Order (*McAferty* Dkt. 41) and Plaintiff's Motion to Extend Scheduling Order (*Harvick* Dkt. 36) and **ORDERS** that the Phase One discovery deadline is extended for **60 days** from the date of this Order.

3. **GRANTS** Plaintiff's Motion to Compel Deposition of Defendant Musk and Supplemental Discovery Responses, and Further Support of Extension of Scheduling Order Based on Defendants' Failure to Supplement Discovery Pursuant to Fed. R. Civ. P. 26(e) and 37(a) (*McAferty* Dkt. 47) and Plaintiff's Motion to Compel Deposition and Responses to Discovery (*Harvick* Dkts. 44 (redacted) and 45 (sealed)). The Court **ORDERS** Defendants to produce Defendant Elon Musk for deposition; reproduce without redaction for non-responsiveness copies of documents previously produced with redactions on that basis; and supplement their discovery responses if required under Rule 26(e).

4. **DISMISSES** Plaintiff's Objection and Motion to Strike the Declaration of Carl Sceusa (*McAferty* Dkt. 54). Counsel for McAferty withdrew the motion during the hearing.

The Court **FURTHER ORDERS** that, within 10 days after Judge Pitman issues his Order on Defendants' Motion for Summary Judgment, the parties shall submit an agreed proposed Second Amended Scheduling Order setting the class certification deadline 60 days after the date of Judge Pitman's Order and extending all later deadlines commensurately or as the parties otherwise agree.

### III.    Defendants' Motion for Summary Judgment in *McAferty*

Defendants move to dismiss McAferty's two remaining claims: fraud and breach of contract. They also contend that McAferty lacks standing to bring this action and that Musk's status as an advocate and donor to America PAC precludes his liability.

### A.  Legal Standard

Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). If the moving party meets its initial burden, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis*, 765 F.3d at 484 (cleaned up).

When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B.  Analysis

This Magistrate Judge recommends granting in part and denying in part Defendants' motion for summary judgment.

### 1. McAferty's Standing

First, Defendants argue that McAferty lacks standing under Article III of the Constitution "because she was never eligible to be selected as a spokesperson for America PAC." Dkt. 37 at 5.

Article III of the United States Constitution confines the federal judicial power to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. For a case or controversy to exist under Article III, the plaintiff must have a "personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). At the summary judgment stage, this requires proof of (1) "an injury in fact" that is (2) "fairly traceable to the challenged conduct" and (3) "likely to be redressed by the lawsuit." *Tex. Med. Ass'n v. United States Dep't of Health & Human Servs.*, 110 F.4th 762, 772 (5th Cir. 2024) (quoting *Biden v. Nebraska*, 600 U.S. 477, 489 (2023)). "If any one of these three elements—injury, causation, and redressability—is absent, plaintiffs have no standing in federal court under Article III of the constitution to assert their claim." *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *State v. Rettig*, 987 F.3d 518, 527 (5th Cir. 2021).

Defendants argue that McAferty cannot establish a concrete injury based on not receiving petition program benefits because petition signers "did not become eligible for the spokesperson opportunity unless their submission matched the state voter file" and the information she submitted "could not be matched to an Arizona voter record." Dkt. 37 at 5. Defendants contend that any alleged loss of the opportunity to earn $1 million is speculative or hypothetical because McAferty was not part of the qualifying pool in the first place. *Id.* at 6. For the same reason, they argue, she cannot show causation and redressability.

In response, McAferty submits evidence that she is a registered voter in Arizona and has been since 1999. Dkt. 53-8; McAferty Tr. at 16:11-17, Dkt. 53-1 at 17. She argues that the petition terms

> did not state that each petition signer's name must be accurately run through Defendants' verification systems, regardless of error on either end. It stated that registered voters in the designated states were eligible for referral payments and the spokesperson opportunity. As a voter registered in Arizona, Plaintiff was eligible for both referral payments and the spokesperson opportunity, and accordingly has standing to pursue her claims. Defendants' verification systems may have failed to accurately assess Plaintiff's eligibility, but that is insufficient to defeat Plaintiff's standing to pursue her claims.

Dkt. 52 at 12.

This Magistrate Judge finds that McAferty has submitted evidence setting forth specific facts, which the Court takes as true for purposes of Defendants' summary judgment motion, showing her eligibility for the petition payment as a registered voter in Arizona and therefore her Article III standing to assert her claims.[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Inclusive Comtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) ("[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements at that stage of litigation.") (citation omitted).

Defendants also argue that because Plaintiff testified at deposition she had not seen or heard Musk use the word "randomly" at a town hall on October 19, 2024, her alleged loss of opportunity is not fairly traceable to that remark. But McAferty submitted deposition testimony that she understood the drawing would be random and would not have registered otherwise. McAferty Tr. at 29:12-31:16, 44:1-46:2, 69:3-20, 80:16-81:14, Dkt. 53-1 at 30-32, 45-47, 70, 81-82. Taking this evidence as true, the Court finds that McAferty has raised a fact question sufficient to demonstrate traceability at the summary judgment stage.

---

[3] For that reason, the Court need not consider McAferty's argument that she suffered a concrete economic injury independent of her eligibility for any drawing by providing her PII to Defendants, but observes that Judge Pitman addressed this question in denying Defendants' motion to dismiss. Dkt. 25 at 7-15.

### 2. Fraud Claim

To prevail on her fraud claim under Texas common law, McAferty must show that Defendants (1) made a material representation that was false, (2) knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth, and (3) intended to induce her to act on the representation, and that (4) she actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018). Defendants challenge all fraud elements except the third, intent to induce.

The Court finds that McAferty has offered evidence sufficient to raise a genuine issue of material fact as to each remaining fraud element. First, as discussed above, McAferty testified at deposition that Musk's allegedly false assertion that $1 million would be awarded "randomly" each day was material to her decision to sign the petition. Second, while McAferty cites no evidence that Musk knew the representation was false, there is evidence raising a fact question whether it was made at least recklessly. America PAC's Director and Treasurer, Christopher Young, testified:

> Q. What was your reaction when he said one million dollars would
>    be provided randomly?
>
> A. I was surprised. It was not the words I would have chosen, and
>    it was not the way that we had -- you know, with legal counsel
>    and consultation, discussed the program and how it would run.

Young Tr. at 119:9-14, Dkt. 53-2 at 32.

For the fourth element, Defendants argue that McAferty has not established reliance because: "At the time she signed the Petition, Plaintiff had no information regarding how people would be selected for the opportunity to earn $1 million." Dkt. 57 at 6. As discussed in the preceding section, McAferty testified that she had heard about the $1 million spokesperson opportunity through news

coverage and social media before she signed the petition, understood the drawing would be random, and would not have registered otherwise. McAferty Tr. at 29:12-31:16, 44:1-46:2, 69:3-20, 80:16-81:14, Dkt. 53-1 at 30-32, 48-50, 70, 81-82.

The Court now turns to the final element, injury. McAferty argues that she "suffered a real and measurable loss when she disclosed her information under false pretenses, regardless of whether she ultimately qualified for any prize." Dkt. 52 at 12. She contends that Defendants considered her PII valuable because they purchased the same information she and other petition signers shared from state voter databases to verify the eligibility of petition signers. *Id.* at 23 (citing Young Tr. at 110:9-111:13, Dkt. 53-2 at 30). McAferty also submits the Declaration of Michael Kolenc, a professional campaign strategist, discussing the value of the information she provided. Dkt. 53-9. Defendants contend that McAferty cannot prove this alleged injury because the petition's written eligibility rules were not false; she voluntarily provided her contact information to sign a petition she agreed with; and she was not denied any expected benefit. Dkt. 37 at 14. Defendants add that McAferty offers no evidence "that her information was sold, misused, or monetized in a way that caused her a concrete financial injury." Dkt. 57 at 10.

In denying Defendants' motion to dismiss, Judge Pitman found:

> Plaintiff's injury was that she allegedly provided Defendants her PII as consideration for a chance to win $1 million—something she would not have done had she known that Defendants' representations of the program were fraudulent. Plaintiff may recover the value of her PII as damages, and as such she has plausibly alleged damages for the fraud claim.

Dkt. 25 at 19. The Court finds that McAferty has submitted evidence sufficient to raise genuine disputes of material fact as to the value of her PII and injury she suffered by submitting it and recommends denying Defendants' motion for summary judgment on her fraud claim.

### 3. Breach of Contract Claim

Under Texas law, a plaintiff asserting breach of contract must prove (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Burbridge v. CitiMortgage, Inc.*, 37 F.4th 1049, 1051 (5th Cir. 2022); *Foster v. Centrex Cap. Corp.*, 80 S.W.3d 140, 143-44 (Tex. App.—Austin 2002, pet. denied). A valid contract requires (1) an offer; (2) an acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) each party's consent to the terms; (5) execution and delivery of the contract with intent that it be mutual and binding; and (6) consideration. *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Id.* (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

This Magistrate Judge finds that McAferty has not raised a genuine issue of material fact that she entered into a valid contract with Defendants. McAferty argues that "Defendants offered any qualified voter who signed their petition the opportunity to be randomly selected to win $1 million, and Plaintiff accepted this offer by signing the petition." Dkt. 52 at 19. She contends:

> At live town hall events and through social media campaigns, Defendants definitively offered the chance of selection for $1 million to those who signed their petition in qualified states. The only further information Defendants provided regarding this offer was that the selection would take place daily and would be random. These definite and concrete statements are sufficient to create a binding offer, which Plaintiff definitively accepted in signing the petition.

*Id.* at 20.

"In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*,

22 S.W.3d 831, 846 (Tex. 2000); *see also Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (holding that, to be enforceable, a contract must address all essential and material terms with "a reasonable degree of certainty and definiteness") (citation omitted).

Defendants argue that the petition page McAferty signed "contained no guaranteed payment terms, no defined selection protocol, no mandatory timing mechanism, and no restriction on discretion. . . . It did not promise that any signer would receive $1 million, nor did it describe how any individual would be selected." Dkt. 37 at 16. The petition page is reproduced below:

Dkt. 37-1 at 3.

10

The Court finds this language insufficient to constitute an offer, acceptance, meeting of the minds, consent, or intent to create a mutual and binding contract. In fact, McAferty testified that she did not believe she was entering into an agreement with America PAC by signing the petition. McAferty Tr. at 76:8-12, Dkt. 53-1 at 77 ("I didn't regard it as an agreement. I regarded it more as like a raffle or a lottery that you were putting your information to have an opportunity to win."). Nor are America PAC's posts promising, e.g.: "Every day from now until Election Day, one registered swing state voter who signs the petition to support Free Speech & Right to Bear Arms will be selected to earn $1 MILLION," sufficiently definite to create a valid contract between McAferty and Defendants. Dkt. 37-1 at 31. Because McAferty has not met her burden to raise a genuine fact question about the existence of a valid contract, this Magistrate Judge recommends that Judge Pitman find her breach of contract claim fails as a matter of law.

### 4.  Musk's Status

Finally, Defendants argue that McAferty's claims against Musk fail because he had no right of control over America PAC but "acted as a donor and advocate, not as an officer, director, or authorized decisionmaker," precluding liability. Dkt. 57 at 15-16.

Under Texas law, McAferty may show that Musk had authority to act on behalf of America PAC through express actual authority, implied actual authority, or apparent authority. *Schrum v. Land*, 12 F. Supp. 2d 576, 582 (S.D. Tex. 1997).

> Apparent authority arises either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise.

*In re Russell*, 941 F.3d 199, 205 (5th Cir. 2019) (cleaned up).

11

McAferty cites evidence in the summary judgment record that America PAC permitted Musk to act with its apparent authority. For example, Musk signed at least the first oversized "prop" check for $1 million that America PAC presented to a petition signer in Pennsylvania selected as a spokesperson. Dkt. 37-1 at 31; Young Tr. at 121:16-19, Dkt. 53-2 at 32. Even the text message McAferty's brother sent to her with a link to the petition stated that "Musk is paying 1 Million to someone each day" to sign the petition, demonstrating his perception of Musk's apparent authority over the petition program. Dkt. 37-1 at 39. The Court does not recommend granting summary judgment to Musk based on lack of control.

### IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that Judge Pitman **DENY** Defendants' Motion for Summary Judgment (Dkt. 37 in *Jacqueline McAferty v. Elon Musk & America PAC*, No. 1:24-cv-1346-RP) as to McAferty's fraud claim but **GRANT** the motion as to her breach of contract claim and dismiss that claim with prejudice.

The Court **FURTHER ORDERS** the Clerk to remove these cases from this Magistrate Judge's docket and return them to the docket of the Honorable Robert Pitman.

### V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must identify those findings or recommendations to which objections are being made. The Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the Honorable Robert Pitman of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings

and legal conclusions accepted by Judge Pitman. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on June 25, 2026.

                                  SUSAN HIGHTOWER
                                  UNITED STATES MAGISTRATE JUDGE