IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JACQUELINE MCAFERTY, individually and on behalf of all others similarly situated, *Plaintiff,* | § § § § | |
| vs. | § § | No. 1:24-cv-1346-RP |
| ELON REEVE MUSK & AMERICA PAC, *Defendants.* | § § § | |

## DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE
## REPORT AND RECOMMENDATION

Defendants Elon Musk and America PAC respectfully object to the Magistrate Judge's Report and Recommendation ("Report," Dkt. 61) to the extent it concludes that Plaintiff Jacqueline McAferty has Article III standing and recommends denying Defendants' Motion for Summary Judgment on Plaintiff's fraud claim. Defendants do not object to the recommendation that summary judgment be granted on Plaintiff's breach of contract claim and that it be dismissed with prejudice.[1]

Plaintiff did not carry her burden to establish Article III standing because the record shows she was not part of the qualifying pool for the spokesperson opportunity at issue and suffered no concrete injury from providing basic contact information to sign a petition she supported. Even if the Court reaches the merits, summary judgment should still be entered for the Defendants because Plaintiff has identified no record evidence creating a genuine dispute of material fact on multiple essential elements of fraud, including actual and justifiable reliance, recklessness, and injury. The Report denies summary judgment on the fraud claim based on Plaintiff's subjective understanding of the Petition Program[2], generalized and unspecified news coverage and/or social media that does not.

---

[1] This filing addresses only the Magistrate Judge's Report and Recommendation on Defendants' case-dispositive motion. Defendants reserve all rights with respect to the Magistrate Judge's separate non-dispositive discovery rulings, including any rights available under Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(A), and the Local Rules.

[2] Defendants use "Petition Program" to refer collectively to America PAC's citizen petition promoting the First and Second Amendments to the United States Constitution, and the related referral and spokesperson opportunities.

identify any specific actionable representation on which she relied, a remark from Mr. Musk that she did not see or hear before signing the Petition, and an abstract theory that her personal information had some indeterminate value. That is insufficient under Rule 56.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court reviews *de novo* those portions of a report and recommendation to which a party makes specific objections. 28 U.S.C. § 636(b)(1) (district judge "shall make a *de novo* determination" of the portions of the report or recommendations to which objection is made). Defendants specifically object to the Report's conclusion that Plaintiff has Article III standing and to the recommendation that summary judgment be denied on Plaintiff's fraud claim. Dkt. 61 at 6, 8, and 12.

Although the Report recites the Rule 56 summary judgment standard, its analysis applies the Rule 12(b) standard for dismissal at the pleading stage. In addressing standing, the Report states that Plaintiff "submitted evidence setting forth specific facts, which the Court takes as true for purposes of Defendants' summary judgment motion." Dkt. 61 at 6. But Rule 56 does not permit a court to "take as true" a Plaintiff's allegations, as it must at the motion to dismiss stage. *Compare, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (at the motion to dismiss stage, courts accept well-pleaded factual allegations as true), *with Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–52 (1986) (denying a motion for summary judgment requires evidence sufficient for a reasonable jury to return a verdict for the nonmovant). While a court deciding a summary judgment motion views the record evidence in the light most favorable to the nonmovant, Plaintiff must still identify specific, competent evidence from which a reasonable jury could find in her favor on each essential element of her claim. *See, e.g., Anderson,* 477 U.S. at 248–52; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). Unsupported inferences, subjective belief, conclusory allegations, and speculation do not create a genuine dispute of material fact. *See, e.g., Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

After the Report applied the Rule 12(b) standard to Defendants' summary judgment motion, it reached the wrong result. Plaintiff may not—as the Report found—avoid summary judgment through subjective belief, speculation, generalized news coverage, or an abstract theory of value that finds no support in the record. *See Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence" is insufficient); *Little*, 37 F.3d at 1075 (nonmovant cannot satisfy summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence"). The question on summary judgment is not whether Plaintiff has plausibly alleged that she expected spokespersons would be selected differently, or theorized that the contact information she input on the Petition had some abstract value. The question is whether the summary judgment record contains evidence sufficient to establish Article III standing and, if the Court reaches the merits, to permit a reasonable jury to find in Plaintiff's favor on each required element of fraud. It does not.

## I.    The Report Correctly Recommended Dismissal with Prejudice of the Breach of Contract Claim.

Defendants do not object to the recommendation that Plaintiff's breach of contract claim be dismissed with prejudice. The Report correctly concludes that Plaintiff failed to raise a genuine dispute of material fact regarding the existence of a valid contract. Among other points, the Report recognizes that the Petition page contained no guaranteed payment terms, no defined selection protocol, no mandatory timing mechanism, no restriction on discretion, and no promise that any signer would receive $1 million. Dkt. 61 at 9–11. The Report also correctly notes that Plaintiff's testimony confirms that she did not believe she was entering into an agreement by signing the Petition. Dkt. 61 at 10–11Therefore, the Court should adopt that portion of the Report.

## II.    The Report Erred in Concluding That Plaintiff Met Her Summary Judgment Burden as to Article III Standing.

The Report errs in concluding that Plaintiff established Article III standing. At summary judgment, Plaintiff bears the burden to support each element of standing with competent evidence,

not assumptions, subjective impressions, or allegations. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Report concludes that Plaintiff submitted evidence of eligibility for the spokesperson opportunity because she submitted evidence that she is a registered voter in Arizona. Dkt. 61 at 5–6. That does not answer Defendants' standing argument. Defendants do not argue that Plaintiff lacks standing for lack of voter registration. Rather, Plaintiff lacks standing because her Petition submission could not be matched to an Arizona voter record and, as a result, she was not part of the qualifying pool for spokesperson selection in the first place. Because Plaintiff never qualified for the opportunity, she cannot claim a concrete, redressable injury from not being considered for it.

The record evidence shows that IMGE, an America PAC signer-verification vendor, "was unable to match the information Plaintiff Jacqueline McAferty submitted when she signed the Petition to a registered voter record in the Arizona state voter file."[3] It also shows that Petition signers who could not be matched to an eligible voter record were not part of the qualifying pool for the spokesperson opportunity.[4] To survive summary judgment on Article III grounds, Plaintiff was required to come forward with competent evidence creating a genuine dispute as to whether she qualified for the spokesperson opportunity. She did not. Indeed, even crediting Plaintiff's voter registration, this was not sufficient to enter the spokesperson qualifying pool. As America PAC's Director and Treasurer, Chrisopher Young, testified, a registered voter had to be matched through the information submitted on the Petition[5], and Mr. Sceusa's declaration confirms that Plaintiff did not.[6] That defeats injury in fact because Plaintiff cannot claim a concrete injury from not being considered for an opportunity for which she never qualified. It also defeats redressability because there

---

[3] Dkt. 37, Appx. 9, Sceusa Decl. ¶ 8.
[4] *Id. See also, e.g.*, Young Dep. 40:2–10; 55:18–23 (Appx. 2).
[5] Young Tr. 110:9–111:13.
[6] Sceusa Decl. ¶ 8.

is no lost opportunity to restore, and no damages tied to the denial of a benefit Plaintiff was never eligible to receive.

Plaintiff also cannot establish injury-in-fact based on the loss of a speculative chance to receive $1 million where the undisputed evidence shows she did not qualify for the opportunity. Nor can she avoid that problem by arguing that Defendants' verification process may have failed to assess her eligibility accurately. Plaintiff submitted no evidence that the verification process failed, that her submission should have matched the voter file, or that she was actually included in any qualifying pool from which she could have been selected as a spokesperson. A speculative lost opportunity is not a concrete injury. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be certainly impending" and "allegations of possible future injury are not sufficient"); *Lujan,* 504 U.S. at 560 (injury-in-fact must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical"). That same defect also defeats redressability because there is no lost opportunity to restore and no damages tied to the denial of a benefit Plaintiff was never eligible to receive. *See Lujan*, 504 U.S. at 561 (redressability requires that it be "likely," not merely "speculative," that the injury will be redressed by a favorable decision). The Report erred in concluding otherwise.

Plaintiff's alternative theory of injury based on the alleged value of her personal information does not save her standing. She voluntarily provided basic contact information to sign a petition she supported, and she has not shown that the information was sold, misused, monetized, or otherwise used in a way that caused her concrete harm.[7] An unsupported assertion that contact information may have value to an unidentified third party is not the same as a concrete injury to Plaintiff and does not raise a triable fact issue.

The same defect also undermines traceability, and Plaintiff's standing independently fails on that basis. The alleged misrepresentation on which the Report relies is Mr. Musk's use of the word

---

[7] McAferty Dep. 40:11–25; 41:1–13; 81:25; 82:1–25; 83:1–3.

"randomly" to describe how spokesperson contracts would be awarded. Plaintiff, however, testified that she did not see or hear that statement before signing the Petition.[8] Vague testimony that Plaintiff heard the opportunity discussed in news coverage or on social media cannot establish traceability because it does not tie Plaintiff's alleged injury to any specific statement by either Defendant. Without that evidence, Plaintiff's alleged injury can only be traced to her own subjective understanding of the Petition Program, and not to Defendants. *See, e.g., Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) ("standing cannot exist where the injury depends on the unfettered choices made by independent actors not before the court"); *Inclusive Cmtys. Proj. v. Dep't of Treasury,* 946 F.3d 649, 655 (5th Cir. 2019) (at summary judgment, injury can't result from independent third-party action or be self-inflicted).

Accordingly, Defendants object to the Report's conclusion that Plaintiff carried her summary judgment burden to raise a genuine factual dispute as to Article III standing. The Court should reject that finding and dismiss the fraud claim for lack of jurisdiction. In the alternative, even if the Court concludes that Plaintiff has raised a triable fact issue as to standing, Defendants are entitled to summary judgment because Plaintiff failed to create a genuine dispute of material fact on each essential element of fraud.

## III.    The Court Should Reject the Recommendation to Deny Summary Judgment on the Fraud Claim.

The Report's fraud recommendation rests on three flawed premises: that Plaintiff's subjective understanding of the Petition Program can substitute for proof of actual reliance on an actionable misrepresentation; that Mr. Young's testimony that he would have chosen different words creates a triable issue on knowledge or recklessness; and that the abstract value of Plaintiff's personal  information is enough to establish a recoverable fraud injury. Dkt. 61 at 6–8. None is sufficient under Rule 56. Taken together, the record does not permit a reasonable jury to find for Plaintiff on *any* of

---

[8] McAferty Dep. 26:16-25.

these essential elements of fraud. The Court need only agree with one to set aside the recommendation and grant summary judgment for Defendants on Plaintiff's fraud claim.

### A. Plaintiff Identified No Actionable Misrepresentation on Which She Actually Relied.

To prevail on her fraud claim, Plaintiff must prove that Defendants made a material false representation, that Plaintiff actually and justifiably relied on that representation, and that she was injured as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018).

The Report finds that Plaintiff created a fact issue because she testified that she understood the spokesperson selection process would be random, and she would not have signed the Petition absent that understanding. Dkt. 61 at 6–8. This falls short of raising a triable fact issue here, for at least two reasons.

First, Plaintiff has not met her burden to raise a fact issue as to reliance. A fraud claim requires proof that Plaintiff "actually and justifiably relied upon the representation" at issue, *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001), not merely that she formed a subjective impression, assumption, or generalized understanding based on unspecified news coverage or social media. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Plaintiff therefore had to identify a specific pre-signing representation that she saw, heard, understood, and acted upon. She did not. Her post-signing interpretation of public coverage cannot create reliance on a statement that was not before her when she signed the Petition.

The alleged misrepresentation identified in the Report is Mr. Musk's use of the word "randomly" to describe how spokesperson contracts would be awarded. Dkt. 61 at 7. Critically, however, Plaintiff did not see or hear that statement before signing the Petition.[9] A statement Plaintiff did not receive, hear, read, or know about could not have induced her to act. *See Ernst & Young*, 51

---

[9] McAferty Dep. 26:16-25.

S.W.3d at 577. Plaintiff also cannot bridge that gap by relying on indistinct testimony that she heard about the spokesperson opportunity through news coverage or social media.[10] Dkt. 61 at 7–8. Such testimony does not identify the specific statement she received, who made it, when it was made, or how it conveyed any false representation by either Defendant. *See Ernst & Young*, 51 S.W.3d at 577 (fraud requires proof that the plaintiff "actually and justifiably relied upon the representation"); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997) (fraud must be tied to the "time, place and contents of the false representations" and the "identity of the person making the misrepresentation"). That evidentiary gap is fatal: absent proof of the representation on which Plaintiff allegedly relied, a jury would be left to speculate that her subjective understanding was caused by Defendants' own actionable statement.

Second, Plaintiff has not raised a triable fact question as to falsity. A representation can only support a fraud claim if it "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Hoffman v. L & M Arts*, 838 F.3d 568, 579 (5th Cir. 2016) (citing *Presidio Enters. v. Warner Bros. Distributing Corp.*, 784 F.2d 674, 679 (5th Cir. 1986)). "Randomly," as used to describe the awarding of spokesperson opportunities, is too indefinite to be empirically verified as true or false and therefore cannot constitute an actionable statement of fact. *See, e.g.*, *Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285, 292 (5th Cir. 2023) (fraud requires "promises or assurances specific or definite enough upon which reliance could be reasonably made").[11] Plaintiff cannot convert generalized promotional language into a technical guarantee of a selection process that was never promised. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 163 (Tex. 1995).

The Report's own contract analysis confirms the point. The Petition page Plaintiff signed did not describe how any individual would be selected and did not guarantee that any signer would receive

---

[10] McAferty Dep. at 29:12–31:16, 44:1–46:2, 69:3–20, 80:16–81:14.
[11] *See also, e.g., Olson v. Major League Baseball*, 29 F.4th 59, 73 (2d Cir. 2022) (promotional statements describing fantasy baseball contests as "games of skill" are "non-actionable opinion.").

$1 million. Dkt. 37-1 at 3; *see also* Dkt. 61 at 10. The same indefiniteness that defeats contract formation also defeats Plaintiff's attempt to identify a concrete, actionable misrepresentation. Texas courts hold that reliance on vague or indefinite promises is unreasonable as a matter of law and cannot support fraud. *See Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 439 S.W.3d 571, 577–78 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Herod v. Baptist Found. of Tex.*, 89 S.W.3d 689, 694–95 (Tex. App.—Eastland 2002, no pet.). Plaintiff's subjective belief that the process would be random is not enough to create a triable fraud claim. Defendants are therefore entitled to summary judgment on the fraud claim.

**B.  Plaintiff Identifies No Evidence Raising a Factual Dispute as to Knowledge or Recklessness.**

The Report also determines that Plaintiff raised a fact issue on recklessness because Mr. Young testified that he was "surprised" when Mr. Musk used the word "randomly" and that it was "not the words [he] would have chosen." Dkt. 61 at 7. That testimony is insufficient as a matter of law to establish knowledge or recklessness by either Defendant. *See JPMorgan Chase Bank*, 546 S.W.3d at 653 (fraud requires proof that the defendant knew the representation was false or made it recklessly as a positive assertion without knowledge of its truth); *Ernst & Young*, 51 S.W.3d at 577. The Report also acknowledges that Plaintiff cites no evidence that Mr. Musk knew the challenged statement was false. Dkt. 61 at 7.

Mr. Young's testimony does not create a triable issue as to America PAC's knowledge or recklessness. The Report identifies no evidence that America PAC knew the challenged statement was false, approved a false statement with knowledge of its falsity, or acted recklessly by making a positive assertion without knowledge of its truth. That omission is telling. Mr. Young's testimony is the only evidence the Report cites on this element, and it does not establish falsity, knowledge, or recklessness by America PAC. A witness's after-the-fact statement that he would have used different wording does not support a finding that America PAC made a false representation to Plaintiff, much less that it did

9

so knowingly or recklessly. Plaintiff therefore failed to carry her Rule 56 burden, and the fraud claim fails as to America PAC as a matter of law.

Plaintiff also cannot establish recklessness by moving back and forth between Defendants: Mr. Young's reaction does not prove Mr. Musk's state of mind, and Mr. Musk's alleged use of the word "randomly" does not prove that America PAC acted with knowledge or recklessness. Plaintiff therefore failed to carry her Rule 56 burden to show knowledge or recklessness by either Defendant.

Texas law requires more than proof that a witness would have preferred different phrasing. *See JPMorgan Chase Bank, N.A.,* 546 S.W.3d at 653; *Ernst & Young,* 51 S.W.3d at 577. A fraud claim cannot proceed to trial on speculation that a statement was reckless merely because a different speaker, after the fact, testified that he would not have chosen the same word. *See generally Little*, 37 F.3d at 1075.

### C. Plaintiff Has Not Produced Evidence of a Recoverable Fraud Injury.

The Report further errs in concluding that Plaintiff raised a genuine dispute of material fact as to injury. At the motion to dismiss stage, the Court held that Plaintiff plausibly *alleged* injury based on the purported value of the information on her Petition submission. Dkt. 25 at 19; *see also* Dkt. 61 at 8. Summary judgment, however, requires evidence, not allegations. Plaintiff must come forward with competent evidence of a concrete loss to *her*. She has not.

Plaintiff has not produced evidence that her information was sold, misused, monetized, or used in a way that caused her a concrete financial injury. Her own testimony confirms the absence of such injury: she was not aware of any misuse of her information, did not purchase credit monitoring or fraud-protection services as a result of signing the Petition, and did not incur any out-of-pocket loss.[12] She voluntarily provided basic contact information to sign a petition she supported. That is not a recoverable fraud injury under Texas law. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors,*

---

[12] McAferty Dep. 40:11–25, 41:1–13, 81:25–83:14;*see also* Dkt. 37 at 14.

*Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (Texas recognizes out-of-pocket and benefit-of-the-bargain measures of direct damages for common law fraud).

Nor does the Kolenc declaration create a genuine dispute of material fact. As an initial matter, Mr. Kolenc was not properly disclosed as an expert, and the Court recognized during the hearing that he was undisclosed.[13] His declaration therefore cannot supply expert opinion evidence regarding the purported value of Plaintiff's information. In any event, even if considered, a generalized assertion that voter or donor information can have value to political campaigns does not establish that Plaintiff suffered a concrete or compensable loss. *See generally Formosa Plastics,* 960 S.W.2d at 49 (recognizing out-of-pocket and benefit-of-the-bargain damages as the measures of direct damages for common law fraud); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (same). An opinion that information may be useful to a campaign is not evidence that Plaintiff in this matter lost money, lost property, was deprived of an expected benefit, or otherwise suffered damages proximately caused by reliance on a false representation. The fraud damages inquiry focuses on injury to Plaintiff, not theoretical utility to Defendants. The $47 referral payment does not fill that gap. Discovery revealed that it was simply an incentive for referring signers to the Petition, not a valuation of Plaintiff's information or proof that she suffered a recoverable loss (and certainly not a measure of damages resulting from fraud).[14] *See* Dkt. 37 at 2.

Moreover, the Report's decision improperly collapses alleged consideration into injury. Plaintiff did not produce evidence that she suffered a recoverable loss as a result of her reliance on a false statement. She cannot transform the abstract utility of voter contact information into compensable fraud damages.

---

[13] June 23, 2026, Hr'g Tr. 57:23–58:2. (Appx.4-5).
[14] Young Dep. 114:1–19, 116:10–13.

**D. The Report's Apparent-Authority Analysis Does Not Support Maintaining the Fraud Claim Against Mr. Musk.**

The Report also declines to grant summary judgment to Mr. Musk based on lack of control, reasoning that Plaintiff cited evidence from which a jury could find apparent authority. Dkt. 61 at 11–12. That conclusion does not support allowing the fraud claim against Mr. Musk to proceed.

Apparent authority under Texas law depends on manifestations by the principal that would lead a reasonably prudent person to believe the agent had authority. *See Gaines v. Kelly*, 235 S.W.3d 179, 182–83 (Tex. 2007) (apparent authority arises from the principal's conduct and requires conduct that would lead a reasonably prudent person, using diligence and discretion, to believe the agent had authority). It cannot be created solely by the alleged agent's conduct or by a third party's perception. *See Gaines,* 235 S.W.3d at 182–83 ("[o]nly the conduct of the principal is relevant"; courts examine "the conduct of the principal and the reasonableness of the third party's assumptions about authority."). The evidence cited in the Report, including Mr. Musk's signing of an oversized prop check and Plaintiff's brother's text stating that "Musk is paying 1 Million to someone each day," does not establish that America PAC made a manifestation to Plaintiff that Mr. Musk had authority to define the selection process or bind America PAC.[15] Dkt. 61 at 11–12.

Mr. Young testified that the check was a prop, had no routing number, and could not be deposited or negotiated.[16] He also testified that Mr. Musk had no authority to sign depositable checks for America PAC; instead, America PAC issued the actual $1 million payments through its compliance team and bank.[17] In other words, the signature appeared on a non-depositable prop, not a financial instrument. Treating that prop as evidence of apparent authority would improperly convert promotional imagery into a manifestation of legal authority by America PAC. The brother's text does

---

[15] *see also* Young Dep. 121:16–19.
[16] Young Dep. 121:8–19; 122:1–15.
[17] Young Dep. 122:1–15.

not solve that problem. Apparent authority cannot rest on a third party's impression of who was "paying" or promoting the program; it must be traceable to a manifestation by the principal. *See Gaines,* 235 S.W.3d at 182–83. The text stating that "Musk is paying 1 Million to someone each day" reflects, at most, Plaintiff's brother's own perception of the promotion. Dkt. 37-1 at 39; *see also* Dkt. 61 at 12. It is not a statement by America PAC, does not show that America PAC authorized Mr. Musk to define the selection process, and does not establish that Plaintiff relied on any manifestation of authority by America PAC before signing the Petition. In fact, the record reflects the opposite: Mr. Young testified that he had the sole authority to make decisions for America PAC, including for the selection process.[18]

Overall, the claim against Mr. Musk fails for the same reasons the fraud claim fails generally: Plaintiff did not rely on a statement by Mr. Musk that she saw or heard before signing, did not create a triable issue on recklessness, and did not produce evidence of recoverable fraud damages. Accordingly, the fraud claim against Mr. Musk should be dismissed.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court adopt the Report and Recommendation only insofar as it recommends granting summary judgment on Plaintiff's breach of contract claim and dismissing that claim with prejudice. The Court should otherwise reject the Report and Recommendation and find that Plaintiff lacks Article III standing to pursue her remaining fraud claim. Alternatively, if the Court reaches the merits, it should reject the recommendation as to fraud, grant Defendants' Motion for Summary Judgment in full, and enter judgment for Defendants.

---

[18] Young Dep. 11:1–25, 12:1–25, 13:1–18, 14:9–24, 119:15–25, 120:1–7.

14

Dated:  July 7, 2026

Respectfully submitted,

*/s/ Nadin Rabelo Linthorst*
Nadin Rabelo Linthorst*
New York State Bar No. 5559042
Anne Marie Mackin
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Andy Taylor
Texas State Bar No. 19727600
Lex Politica PLLC
P.O. Box 341015
Austin, TX 78734
Telephone: (512) 354-1785
nlinthorst@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com
ataylor@vantage.network

**COUNSEL FOR DEFENDANTS**

*Admitted *pro hac vice*