IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JACQUELINE MCAFERTY, *individually and on behalf of all others similarly situated*, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:24-CV-1346-RP |
| | § | |
| ELON MUSK, et al., | § | |
| Defendants. | § | |

**ORDER**

Before the Court is the above-styled cause of action. On March 9, 2026, the Court referred Plaintiff Jacqueline McAferty's ("Plaintiff") Motion to Modify Protective Order to Permit Discovery Sharing, (Dkt. 40), and Amended Motion to Extend Scheduling Order, (Dkt. 41), to United States Magistrate Judge Susan Hightower for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, Dkt. 44). The Court subsequently also referred to the Magistrate Judge Plaintiff's Motion to Compel, (Dkt. 47), and Plaintiff's Motion to Strike the Declaration of Carl Sceusa, (Dkt. 54), for disposition. (Text Orders dated March 10, 2026, and April 21, 2026). Finally, the Court also referred Defendants Elon Musk ("Musk") and America PAC's (collectively, "Defendants") Motion for Summary Judgment, (Dkt. 37), for a report and recommendation pursuant ("R. & R.") to 28 U.S.C. § 636(b)(1)(B). (Text Order dated April 21, 2026). The Magistrate Judge filed an order and report and recommendation on June 25, 2026. (Order and R&R, Dkt. 61). Defendants filed objections to the report and recommendation, (Dkt. 62), and filed an appeal of the Magistrate Judge's non-dispositive order extending the class-certificate deadline, (Dkt. 63). Plaintiff filed a response to Defendant's objections to the report and recommendation. (Resp., Dkt. 65). The Court will review Defendants' objections to the report and recommendation and its appeal of the non-dispositive

order in turn.

## I. REVIEW OF REPORT AND RECOMMENDATION

United States Magistrate Judge Susan Hightower recommends that the Court find (1) Plaintiff has submitted evidence setting forth specific facts that, when taken as true, establish her Article III standing; (2) regarding Plaintiff's Texas law fraud claim, Plaintiff has submitted evidence sufficient to raise a genuine issue of material fact as to each disputed fraud element; and (3) regarding Plaintiff's Texas law breach-of-contract claim, Plaintiff has not met her burden to raise a genuine fact question about the existence of a valid contract. (R. & R., Dkt. 51, at 5–11).

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). When no objections are timely filed, a district court can review the magistrate's report and recommendation for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Because Defendants timely objected to parts of the report and recommendation, the Court reviews these parts of the report and recommendation *de novo* and will review the remaining portion of the report and recommendation for clear error.

### A. Article III Standing

Defendants contend that the Magistrate Judge erred in concluding that Plaintiff met her summary judgment burden regarding Article III standing. (Objs., Dkt. 62, at 3–6). They argue that Plaintiff was not eligible for the spokesperson opportunity, such that she "cannot establish injury-in-fact based on the loss of a speculative chance to receive $1 million" because "her Petition submission could not be matched to an Arizona voter record and, as a result, she was not part of the

qualifying pool for spokesperson selection in the first place." (*Id.* at 4–5). But the public version of the Petition solely stated: "To be eligible, both the referrer and the petition signer must be registered voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin." (Petition, Dkt. 53-3, at 3). Plaintiff has submitted uncontradicted summary judgment evidence that she has been a registered voter in Arizona since 1999. (Arizona Voter Record, Dkt. 53-8, at 2; Pl. Dep., Dkt. 53-1, at 17). Defendants have produced evidence that the vendor utilized to verify voter information "was unable to match the information [Plaintiff] submitted when she signed the Petition to a registered voter record in the Arizona state voter file." (Sceusa Decl., Dkt. 37-1, at 43).

At summary judgment, "the court must draw all justifiable inferences in favor of the nonmoving party," and the Court must view the facts in the light most favorable to the nonmovant. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993); *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016). Here, viewing the facts in the light most favorable to Plaintiff as the nonmovant, and drawing all justifiable inferences in favor of the nonmoving party, it is a justifiable inference that Plaintiff was eligible, and any failure to match her information was the fault of the vendor. Accordingly, Plaintiff has raised a genuine dispute of material fact as to whether she was eligible, such that she has standing to pursue her claims. *See Croft v. Governor of Tex.*, 562 F.3d 735, 746 (5th Cir. 2009) ("At this stage of litigation—summary judgment—the plaintiffs' burden on standing is only to raise an issue of material fact."); *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991)) ("When the defendant moves for summary judgment because of lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue.").

Defendant also argues that Plaintiff has failed to show "a concrete injury" based on her

assertion that her contact information may have value to an unidentified third party.[1] (Objs., Dkt. 62, at 5). But Plaintiff has gone beyond merely asserting that her personal information had value: there is evidence in the record supporting that voter contact information—including the type of contact information submitted by Plaintiff, and in particular for voters in states like Arizona—has value. (*See* Kolenc Decl., Dkt. 53-9, at 2 (opining that the information provided by Plaintiff had market value because "Arizona, like most states, maintains a publicly available roll of all registered voters, but this list does not include phone numbers or email addresses," such that "the information Plaintiff provided" was not otherwise "obtainable directly from state voter rolls")). (*See also* Young Dep., Dkt. 53-2, at 50:18–51:11 (explaining that if a petitioner signer was a non-registered voter, the America PAC team would "actually communicate to that individual telling them they were not eligible, and they would need to get registered to vote"); *id.* at 62:11–19 (stating that a "post-elect[ion]" use of the information submitted with the Petition was to "look[] at each individual's voting history" to examine whether the Petition "in any way shape[d] or form[ed] . . . their participation in the election cycle"); *id.* at 110:13–111:6) (stating that he had purchased voter data, including "the same relevant fields that [America PAC] ask[ed] for on the [P]etition," as certain states require payment); *id.* at 111:10–13 (noting that only some states provide telephone numbers and email addresses on their voter rolls); *id.* at 114:25–115:15 (stating that the newer voter records are more valuable, as old records become incorrect)). The Court can therefore justifiably infer from the record that Plaintiff's provided contact information had value and that her injury could be redressed through damages. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960

[1] Defendants also argue that Plaintiff "cannot establish injury-in-fact" or redressability "based on the loss of a speculative chance to receive $1 million where the undisputed evidence shows she did not qualify for the opportunity." (Objs., Dkt. 62, at 5). Given that the Court has found that Plaintiff has raised a genuine dispute of material fact regarding her eligibility, this argument fails. Moreover, Defendants' argument citing *Clapper* also fails; Plaintiff is not arguing "threatened" injury. (*Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Rather, Plaintiff's theory of injury is that she gave away the value of her personally identifiable information ("PII") for nothing, without receiving the bargained-for benefit from Defendants.

S.W.2d 41, 49 (Tex. 1998) ("Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received.") (citations omitted). *See also* Restatement (Second) of Torts § 549(1) (1977) (stating that the plaintiff in a fraudulent misrepresentation action can receive in damages "the difference between the value of what he has received in the transaction and its purchase price or other value given for it" and "pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation").

Finally, Defendants' last challenge to Plaintiff's standing is to the traceability requirement. (Objs., Dkt. 62, at 5–6). They argue that the alleged misrepresentation—Musk's use of the word "randomly"—cannot be the cause of her injury, and she "testified that she did not see or hear that statement before signing the Petition," and "[v]ague testimony that Plaintiff heard the opportunity discussed in news coverage or on social media cannot establish traceability because it does not tie Plaintiff's alleged injury to any specific statement by either Defendant."[2] (*Id.* at 6). But Defendants do not cite any case law supporting that Plaintiff is required to identify a specific statement in that manner or must have heard the statement directly from its maker. Rather, in light of the evidence in the record that Defendants designed the Petition to go "viral"[3] and in fact encouraged signers to

---

[2] Plaintiff testified that she heard about the Petition in the news or social media prior to signing the Petition and that these sources made her believe the $1 million spokesperson opportunity would be randomly selected. (*See, e.g.*, Pl. Dep., Dkt. 52, at 23:4–14, 69:16–70:1).

[3] (*See, e.g.*, Young Dep., Dkt. 52-3, at 46:18–22, 50:2–15 (describing social media videos made of the spokespeople receiving their "massive" $ 1 million check, including "one or two" checks with Musk's signature); *id.* at 87:16–17 (describing the Petition as "going viral"); Pl. Dep., Dkt. 53-1, at 73:11–12 ("There was a lot of news interest in that story [about the Petition] at that particular time."); Kolenc Decl., Dkt. 53-9, at 5 (noting that "America PAC . . . produced invoices in the amount of $725,921 for operating and promoting the [Petition] program")).

share the Petition with others by monetarily rewarding "referrals,"[4] the Court finds instructive case law holding that, when a fraudulent statement is made to someone with the intention or expectation that the statement will be repeated to others, the maker of the fraudulent statement is subject to liability. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) ("Our fraud jurisprudence has traditionally focused not on whether a misrepresentation is directly transmitted to a known person alleged to be in privity with the fraudfeasor, but on whether the misrepresentation was intended to reach a third person and induce reliance. . . . Thus, we have held that a misrepresentation made through an intermediary is actionable if it is intended to influence a third person's conduct."). *See also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 26 (2010) (Breyer, J., dissenting) (quoting *Tanner v. United States*, 483 U.S. 107, 129 (1987)) ("This Court has recognized specifically that 'under the common law a fraud may be established when the defendant has made use of a third party to reach the target of the fraud.'"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 808 (S.D. Tex. 2007) (quoting *Hawkins v. Upjohn Co.*, 890 F. Supp. 609, 612 (E.D. Tex. 1994)). Plaintiff has successfully raised a genuine dispute of material fact as to whether Defendants were the cause of her reliance on the alleged misstatements and misrepresentations, which is enough for the causation element of the standing analysis.

In sum, the Court finds *de novo* that Plaintiff has met her summary judgment burden on injury, causation, and redressability. Thus, the Court overrules Defendants' objections and adopts the report and recommendation regarding Plaintiff's Article III standing as its own order.

**B. Breach-of-Contract Claim**

Defendants do not object to the recommendation that Plaintiff's breach-of-contract claim should be dismissed with prejudice, and Plaintiff did not file objections. Because no party has filed

[4] (Young Dep., Dkt. 53-2, at 116:10–25) (explaining that a registered voter in seven specific states could make $47 if they "referred" the Petition to another eligible registered voter in the included states who also signed it, or $100 per referral in Pennsylvania).

timely objections, the Court reviews the section of the report and recommendation regarding the breach-of-contract claim for clear error. Having done so and finding no clear error, the Court accepts and adopts that portion of the report and recommendation as its own order. The Court will dismiss Plaintiff's breach-of-contract claim with prejudice.

**C. Fraud Claim**

Next, the Magistrate Judge recommended that the Court deny Defendants' Motion for Summary Judgment as to Plaintiff's fraud claim.[5] To prevail on her fraud claim, Plaintiff must prove:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). First, Defendants contend that Plaintiff has not identified an "actionable misrepresentation on which she actually relied." (Objs., Dkt. 62, at 7–8). But Plaintiff specifically testified that she relied upon news sources and a family member who themselves had relied on Musk's false statement—subsequently amplified by America PAC on its X account[6]—that Musk himself would be paying $1 million to random signers of the Petition. (*See e.g.*, Pl. Dep., Dkt. 53-1, at 69:13–20 (testifying that the "implication . . . from all the messaging that came through the media" was that Musk would randomly give $ 1 million to Petition signers)). Plaintiff also testified that she "never would have signed up for this if [she] hadn't thought it was a random drawing, and that there was actually no chance to win," and that it was "ridiculous" to think "anybody would sign up for a drawing if they

[5] Defendants did not challenge the fraud element of intent to induce. (R. & R., Dkt. 61, at 7).

[6] (*See* MSJ Resp., Dkt. 52, at 3 (screenshot of X.com post by America PAC stating "BREAKING: Elon Musk announces that he will be randomly awarding $1 MILLION every day from now until Election Day to registered Pennsylvania voters who sign America PAC's petition . . . .")).

knew there was no chance to win." (*Id.* at 53-1, 69:6–12). And, as explained in Section I(A), *supra*, Texas common law allows for liability where the maker of the misrepresentation "intended [for the misrepresentation] to reach a third person and induce reliance." *See Ernst & Young*, 51 S.W.3d at 578. Given the evidence in the record supporting that Defendants intended for the Petition to spread (i.e., by monetarily encouraging signers to make referrals and by promoting it heavily on social media), it would be unreasonable for the Court to then penalize Plaintiff for hearing about it the Petition through such sources. A reasonable jury therefore could find that Plaintiff actually relied on an actionable misstatement.

Next, Defendants contend that Plaintiff "has not raised a triable fact question as to falsity," because "'[r]andomly,' as used to describe the awarding of spokesperson opportunities, is too indefinite to be empirically verified as true or false and therefore cannot constitute an actionable statement of fact." (Objs., Dkt. 62, at 8). This argument warrants little analysis. A jury could surely conclude that America PAC's process of reviewing a "vetting document" to make the "best selection of someone who ideologically aligned with America PAC"—which included "everything from criminal background history to age, marital status, children" and social media content—was far from random. (*See* Young Dep., Dkt. 53-2, at 42:10–46:1 (explaining the selection process for spokespeople)). Plaintiff has therefore raised a fact issue as to falsity.

Defendants also argue that Plaintiff does not provide evidence to raise a fact issue as to Musk's knowledge or recklessness when he made the statement. But the record shows that Musk "participated in high-level discussions about establishing America PAC" and "participated in high-level discussions with Young and certain America PAC independent contractors about America PAC's projects." (Musk Interr., Dkt. 53-5, at 17). Musk specifically "discussed the concept for the Spokesperson Opportunity Program at a high level" with Chris Young and other individuals. (*Id.* at 19). A jury could therefore infer that Musk knew the spokespeople would not be chosen randomly,

such that he knew his statement that Petition signers would "randomly" be chosen to earn $1 million was false, or that Musk was at least reckless in making that assertion. And a jury could also find that it was false or reckless for America PAC to then promote Musk's statement by posting about Musk "randomly awarding" the Spokesperson Opportunity on America PAC's X page:




(*See* MSJ Resp., Dkt. 52, at 3).[7] Plaintiff has therefore raised a fact issue as to falsity or recklessness

[7] The Magistrate Judge noted at the hearing held on June 23, 2026, that it appears this specific America PAC post on X is not in the summary judgment record. (Hearing Tr., Dkt. 64, at 64–68). Plaintiff's counsel believed the image was located in the record but stated "if it's not, I would definitely want to supplement." (*Id.* at 65). The Magistrate Judge then asked Defense counsel whether she was "disputing that [the image of this post] exists." (*Id.* at 67). Defense counsel did not explicitly answer whether she was disputing it exists and instead discussed the content of the post; the Magistrate Judge followed up by saying, "It sounds like, I mean, from what you're saying, you do have a lot of information about this particular post." (*Id.* at 68). Additionally, Defendants' Reply in support of their Motion for Summary Judgment does not object to this image. Given that Defendants did not object, the Court in its discretion will consider the image. *See Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) ("Documents presented in support of a motion for summary judgment may

for both Defendants. The Court overrules Defendants' objections as to Plaintiff's fraud claim and adopts the report and recommendation regarding Plaintiff's Article III standing as its own order

**D. Musk's Control of America PAC**

The Magistrate Judge recommended that this Court should not grant Musk summary judgment based on lack of control of America PAC. (R. & R., Dkt. 61, at 11–12). Defendants object, asserting that apparent authority must arise from the principal's conduct and cannot be created solely by a third party's perception. (Objs., Dkt. 62, at 11). At the summary judgment stage, viewing the evidence in the light most favorable to Plaintiff as the nonmovant and drawing all reasonable inferences in her favor, a reasonable jury could find that the combination of (1) the "one or two" prop checks signed by Musk for the chosen spokespeople; (2) Musk speaking "publicly about America PAC's work to raise awareness about the same" and "about the Petition to increase awareness about the Petition," including speaking about "referral payments,"[8]; and (3) America PAC itself posting on X that "Elon Musk . . . will be randomly awarding $1 MILLION every day . . . to registered Pennsylvania voters who sign America PAC's petition,"[9] rather than posting that America PAC will be randomly awarding the money, could have made a "reasonably prudent person, using diligence and discretion," believe Musk had apparent authority to state the Petition's procedures. *See Gaines v. Kelly*, 235 S.W.3d 179, 182–83 (Tex. 2007). Accordingly, the Court after *de novo* review overrules Defendants' objections that Musk should not be granted summary judgment on this issue, and the Court adopts the report and recommendation regarding this issue as its own order.

---

be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use."); *Douthit v. State*, No. CV H-19-1712, 2023 WL 4873986, at *5 (S.D. Tex. July 31, 2023) (citing *id.*) ("Because the defendants do not challenge the lack of authentication of the records [the plaintiff] filed in opposition to the motion, the court may consider them in ruling on the motion for summary judgment."); *Munoz v. Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Canada*, 563 F.2d 205, 214 (5th Cir. 1977) ("Inadmissible material that is considered by a district court without challenge may support a summary judgment.").

[8] (*See* Young Dep., Dkt. 53-2, at 50:12–15; Musk Interr., Dkt. 53-5, at 53–54).

[9] (MSJ Resp., Dkt. 52, at 3).

## II. APPEAL OF NON-DISPOSITIVE ORDER

A district judge may reconsider any pretrial matter determined by a magistrate judge where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). District courts apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling under the referral authority of that statute. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The clearly erroneous or contrary to law standard of review is "highly deferential" and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court reaches "a definite and firm conviction that a mistake has been committed." *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The clearly erroneous standard "does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Id.* (citing *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)).

On September 30, 2025, the Court entered a Scheduling Order in this case setting the Phase One discovery deadline on January 30, 2026, and setting Defendants' summary judgment deadline on February 27, 2026. (Scheduling Order, Dkt. 29, at 1–2). The Scheduling Order further stated that if the Court wholly or partially denies any summary judgment motion, "Phase Two discovery on issues related to class certification and any other outstanding fact questions shall commence upon the date that the Court decides Defendants' Phase One summary judgment motion." (*Id.* at 2). The Scheduling Order then provided that "Plaintiffs shall file a motion for class certification on or before April 1, 2026." (*Id.*).

On February 27, 2026, Plaintiff filed an Amended Motion to Extend Scheduling Order. (Mot. for Extension, Dkt. 41). Asserting good cause, Plaintiff requested that the Court extend the Phase One discovery deadline by ninety days and that "[a]ll subsequent deadlines in the Scheduling

Order [be] likewise extended by ninety (90) days." (Mot. for Extension, Dkt. 41, at 4–5; Proposed Order, Dkt. 41-1, at 1). The Court referred this motion to United States Magistrate Judge Susan Hightower for disposition.

On June 23, 2026, the Magistrate Judge held a hearing, at which she granted the Amended Motion to Extend Scheduling Order, (Dkt. 41). (Hearing Tr., Dkt. 64, at 41). Defense counsel asked the Magistrate Judge to clarify which of the dates she was extending. (*Id.* at 43). The Magistrate Judge pointed out that "quite a few of [the] dates" in the Scheduling Order had already passed, including "the class certification deadline," and that "it's going to need to be all deadlines . . . . So yes, it would be each of those deadlines by 60 days or as the parties otherwise agree." (*Id.* at 43–44). Defense counsel then responded, "That makes sense. Thank you, your honor." (*Id.* at 44). And, later in the hearing, Defense counsel stated that the parties had "agreed on [a] phased schedule in the first place, to address individualized issues of standing before getting to the more burdensome stage of class certification." (*Id.* at 68–69).

Defendants now contend that it was contrary to law for the Magistrate Judge to reset Plaintiff's class-certification deadline. (Appeal, Dkt. 63, at 1). They assert that "Plaintiff never specifically requested an extension of the class certification deadline, never identified that deadline by date, never made a deadline-specific showing of good cause under Rule 16(b)(4), and never made any showing of excusable neglect after the deadline expired." (*Id.* at 1). According to Defendants, the Magistrate Judge incorrectly believed the class-certification deadline had been "on hold." (*Id.* at 1–2).

The Court has reviewed the original Scheduling Order, (Dkt. 29), the Amended Motion to Extend Scheduling Order, (Dkt. 41), and the transcript for the hearing held before the Magistrate Judge on June 23, 2026. (Tr. Hearing, Dkt. 64). For one, Plaintiff's motion for an extension was clear that she was seeking an extension of **all** deadlines subsequent to the Phase One discovery

deadline—which would include the class-certification deadline. (Mot. for Extension, Dkt. 41, at 1, 5; Proposed Order, Dkt. 41-1, at 1). Additionally, after agreeing with the Magistrate Judge that extending each of remaining deadlines "makes sense" and not objecting, (Hearing Tr., Dkt. 64, at 43–44), Defense counsel herself explained why there is good cause to extend the class certification deadline—it was the parties' intent to resolve the issue of Article III standing prior to reaching the issue of class certification.[10] (Hearing Tr., Dkt. 64, at 68–69). The dispute over Article III standing has only been resolved as of this Order. Accordingly, upon its own review, this Court finds that the Magistrate Judge's Order extending the class certification deadline was not clearly erroneous or contrary to law.

## III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the report and recommendation of United States Magistrate Judge Susan Hightower, (Dkt. 61), is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 37), is **GRANTED IN PART AND DENIED IN PART**, such that

- Defendants' Motion for Summary Judgment as to Plaintiff's breach-of-contract claim is **GRANTED**, such that her breach-of-contract claim is **DISMISSED WITH PREJUDICE**; and
- Defendants' Motion for Summary Judgment as to Plaintiff's fraud claim and as to the issue of Musk's control or status is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **AFFIRMS** the order granting Plaintiff's Amended Motion to Extend Scheduling Order, (Dkts. 41, 61), and **DENIES** Defendants' appeal, (Dkt. 63).

[10] That this was the parties' intent is supported by the language in the original Scheduling Order providing that "Phase Two discovery on issues related to class certification and any other outstanding fact questions shall commence upon the date that the Court decides Defendants' Phase One summary judgment motion." (Scheduling Order, Dkt. 29, at 2).

**IT IS FINALLY ORDERED** that, in line with the Magistrate Judge's Order, (Dkt. 61, at 3), the parties shall submit an agreed proposed Second Amended Scheduling Order setting the class-certification deadline **sixty (60) days** after the date this Order and extending all later deadlines commensurately or as the parties otherwise agree, on or before **August 28, 2026**.

**SIGNED** on August 18, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE